[L. A. No. 3675.   Department Two.—March 12, 1915.]

In the Matter of the Estate of GEORGE N. REYNOLDS, Deceased. LAURA T. REYNOLDS and CHARLES L. REYNOLDS, Contestants and Appellants.

INHERITANCE TAX—TRANSFER OF HUSBAND TO WIFE IN CONTEMPLATION OF DEATH.—Under the Inheritance Tax Act of 1905 (Stats. 1905, p. 341), as amended in 1911 (Stats. 1911, p. 713), imposing a tax upon the transfer of any property, "when the transfer is of property . . . by deed, grant, bargain, sale, assignment, or gift, made without valuable and adequate consideration in contemplation of the death of the grantor, vendor, assignor or donor," and providing in section 27 thereof, that "the words 'contemplation of death,' as used in this act, shall be taken to include that expectancy of death which actuates the mind of a person on the execution of his will, and in nowise shall said words be limited and restricted to that expectancy of death which actuates the mind of a person in making a gift *causa mortis*," certain gifts made by a husband to his wife, at a time when he was suffering from a mortal disease, and had full knowledge of the character of his ailment, the first of which was made two days before he underwent a grave surgical operation considered absolutely necessary to save his life, and the other of which was subsequently made after a recurrence of the disease and about five months before his death, must be considered as made in contemplation of death, within the meaning of the act, and liable to the tax thereby imposed.

ID.—TRANSFER FROM FATHER TO SON—INADEQUACY OF CONSIDERATION.— A transfer made by such person to his son, about four months before his death, of a department store and its contents, valued at upwards

of one hundred thousand dollars, upon the son's agreeing to assume the indebtedness of the business, amounting to about thirty thousand dollars, and to pay the father six hundred dollars per month during his life, is not for "a valuable and adequate consideration," within the meaning of such inheritance tax law, and is likewise liable to the tax thereby imposed.

APPEAL from an order of the Superior Court of Riverside County imposing an inheritance tax upon property disposed of by a deceased person during his lifetime. F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

W. J. McIntyre, for Appellants.

Lyman Evans, and Robert A. Waring, for State Controller and Respondent.

HENSHAW, J.—This appeal is from the decree of the court in probate imposing an inheritance tax upon property disposed of by the deceased during his lifetime.

By the Inheritance Tax Act (Stats. 1911, p. 713) a tax is imposed upon the transfer of any property, real, personal, or mixed (sec. 1, sub. 3) : "When the transfer is of property made by a resident, or by a nonresident, when such nonresident's property is within this state, by deed, grant, bargain, sale, assignment, or gift, *made without valuable and adequate consideration* in contemplation of the death of the grantor, vendor, assignor, or donor, or intended to take effect in possession or enjoyment at or after such death." The words italicized were added to the act by the amendment of 1911. Otherwise the act is in language identical with the earlier Inheritance Tax Act of 1905. (Stats. 1905, p. 341.) However, it had long and uniformly been held that transfers made upon valuable and adequate consideration were not within the purview of the Inheritance Tax Act, and therefore the amendment served but to clarify and not to change the pre-existing law. Section 27 of the same act, as amended in 1911, declares as follows: "The words 'contemplation of death,' as used in this act, shall be taken to include that expectancy of death which actuates the mind of a person on the execution of his will, and in nowise shall said words be limited and restricted to that expectancy of death which

actuates the mind of a person in making a gift *causa mortis;* and it is hereby declared to be the intent and purpose of this act to tax any and all transfers which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws.'' This amendment also served the purpose of elucidating without changing the law, by giving fuller expression to the legislative intent and meaning.

With the law thus before us, we may come to the facts of the case. George N. Reynolds in his lifetime was a resident of the city of Riverside and was possessed of much wealth. He died testate in September, 1911. The cause of his death was sarcoma—a malignant tumorous growth which first made its appearance upon one of his hips. The excision of a sarcoma by surgical operation sometimes results in an eradication of the trouble. At other times it is recurrent. In the case of Mr. Reynolds the first surgical operation became necesary in 1904. Thereafter the tumor returned and he was obliged to submit to an operation about once a year. In the later stages of the affliction more frequent operations became necessary, the last three occurring three months apart. Mr. Reynolds was well advised of the character of sarcoma; knew from experience the danger of its recurrence, and that if not successfully eradicated it meant death. On the third day of September, 1910, about one year before his death, it was deemed necessary to perform one last grave operation. That was the amputation of his right leg at the hip. This operation held out the only hope of checking his mortal disease. Two days before the operation was performed he made a gift of the Reynolds Hotel property to his wife, Laura T. Reynolds. He recovered from the effects of the operation, but in the spring of 1911 began to fail. The sarcoma returned and, as has been said, occasioned his death in September. On April 14, 1911, he made another gift of the Nevada Block in Riverside to his wife. One day thereafter he made his will leaving ten thousand dollars to his wife, and the remainder of his estate, appraised in the probate proceedings at about one hundred and ten thousand dollars, to his son Charles, the wife and son constituting his sole heirs at law. The inheritance tax appraiser valued the property thus deeded to the wife at one hundred and twenty-five thousand dollars. It was about six months after the last operation when Mr. Reynolds began to fail. He was confined

to his home from June until his death. On May 26th he conveyed to his son Charles the property known as the Reynolds Department Store, valued by the inheritance tax appraiser at one hundred thousand dollars, and on the same day assigned and transferred to him the merchandise in the store. Under the transfer the son Charles assumed all the indebtedness of the business, amounting to about thirty thousand dollars, and agreed to pay his father six hundred dollars per month during his life. The court in probate, after the taking of evidence, held that these transfers were subject to the inheritance tax and decreed accordingly. Whether or no the court's findings in this regard are supported by the evidence is the essential question upon this appeal. In passing upon such transfers the law which will direct trial courts and this court has been sufficiently indicated in the quotations already made. Little or no aid upon the question will be found in the adjudications of other states under their varying laws, and least of all from the courts of New York, which first gave an extremely narrow construction to a gift or transfer "in contemplation of death," holding their statute to mean a gift *causa mortis,* and to be applicable to no other kinds or characters of transfers. *In re Price's Estate,* 62 Misc. Rep. 149, 116 N. Y. Supp. 283, reviews the history of the decisions of that state. Nothing in our law compels us to adopt the restricted construction put by the courts of New York upon their own statute and everything in our law directs that a liberal construction should be placed upon it to the end that its provisions be not evaded. Coming then to the testimony in the case, we have already spoken of the physical condition of the deceased and of his knowledge of the character of his ailment. The transfers to his wife were admittedly gifts, pure and simple. They were made prior to and following an operation "considered absolutely necessary to save his life." Mrs. Reynolds speaks of the transfers to her as gifts and says that they were made under Mr. Reynolds' promise to make provision for her. After his death she filed her election to take these gifts instead of the benefits under the will. All this was done under the agreement that she had with Mr. Reynolds, that the property given to her was in lieu of all rights and claims which she might have against his estate. It would seem to be clear beyond peradventure that as to these transfers, they were made in that contem-

plation of death which the law designates, and that they were gifts in life substituted for gifts by will. The transfers to the son stand upon a slightly but not an essentially different plane. If it can be said that there was any element of valuable consideration received back by the father for his transfer to the son, it was certainly not adequate from any commercial point of view. He was in failing health at the time the gift was made. It was known, and he knew, that his tumor had returned and that the days of his life were numbered, and the agreement to assume an indebtedness of thirty thousand dollars in consideration of a gift in value exceeding one hundred thousand dollars, and the further agreement to pay six hundred dollars a month during the donor's life (which agreement itself does not seem to have been observed) certainly do not measure up to the requirements of the law of a valuable and adequate consideration. Indeed, it seems quite plain that, as in the case of the widow, so in the case of the son, the father in contemplation of death was transferring by gift instead of devise the valuable business which he owned and had theretofore conducted.

The judgment appealed from is therefore affirmed.

Melvin, J., and Lorigan, J., concurred.