[S. F. No. 8778.    Department One.—December 10, 1919.]

In the Matter of the Estate of HERMAN HUGO BRIX, etc., Deceased. JOHN S. CHAMBERS, as Controller, etc., Appellant.

[1] INHERITANCE TAX—TAXABILITY OF TRANSFER—LAW CONTROLLING.—Under the inheritance tax law, the taxability of a transfer made by a deceased person in his lifetime must be determined by the law in effect at the time the transfer ,was made.

[2] ID.—LIABILITY OF TRANSFER TO TAX—ACT OF 1911—ESSENTIALS.—The act of 1911, (Stats. 1911, p. 713), imposing a tax on certain transfers clearly requires two things to subject such a transfer to the tax, first, that it be without valuable and adequate consideration, and second, that it be either in contemplation of death, or intended to take effect in possession and enjoyment at death.

[3] ID.—PROPERTY NOT SUBJECT TO TAX—APPEAL FROM ORDER—RULE AS TO AFFIRMANCE.—On an appeal from an order declaring that a transfer of· certain property made by a deceased person in his lifetime is not subject to an inheritance tax, the finding of the lower court that the consideration was adequate must be upheld if it can be supported upon any reasonable view of the evidence, even where there is no conflicting testimony.

[4] ID.—DETERMINATION OF ADEQUACY OF CONSIDERATION—RULE.—In determining whether a transfer was made for an adequate consideration under the inheritance tax law of 1911, the rule applicable in specific performance cases should control.

[5] HUSBAND AND WIFE—COMMUNITY PROPERTY—RIGHTS OF WIFE.—While the wife has no title to the community property nor estate or interest therein, yet she has rights in relation thereto, the surrender of which may constitute a valuable and, according to the circumstances of the case, an adequate consideration for her transfer thereof. She has a possible interest in whatever remains upon the dissolution of the community otherwise than by her own death.

[6] ID.—DISSOLUTION OF MARRIAGE—RIGHTS OF WIFE IN COMMUNITY PROPERTY.—Upon the death of the husband the wife takes one-half of the community property, and upon a divorce she may, in a proper case, be awarded even the whole of it. If a divorce is granted without any disposition of the community property, the former wife becomes the owner of one-half of the community property as tenant in common with her former husband.

[7] ID.—GIFT OF COMMUNITY PROPERTY BY HUSBAND—WANT OF CONSENT OF WIFE—PART RECOVERY FROM DONEE.—If the husband makes a gift of community property without the wife's

consent, she may upon his death recover from the donee one-half of the property given.

[8] ID.—EVIDENCE—SIGNATURE OF WIFE TO REAL PROPERTY CON-TRACTS — CUSTOM — JUDICIAL NOTICE.—The custom with pur-chasers of real property to insist on the wife's signature to all contracts relating thereto is so general that it is a matter of common knowledge, of which the court may take judicial notice.

[9] INHERITANCE TAX — TRANSFER BY HUSBAND AND WIFE TO CHILDREN—CONSIDERATION—SETTLEMENT OF PROPERTY RIGHTS.— A transfer by a husband and wife of certain real property to their children subject to a life estate reserved to the husband was supported by a valuable and adequate consideration within the meaning of the inheritance tax law of 1911, where such transfer was made pursuant to an agreement between the grantors by the terms of which the wife not only waived all of her interest in the community property, but they completely altered their property relations as authorized by section 159 of the Civil Code.

[10] ID.—CLAIM OF WIFE AFTER DEATH OF HUSBAND—CONSIDERA-TION FOR TRANSFER UNAFFECTED.—Effort on the part of the wife after the death of the husband to obtain a part of the property to which, under the agreement, she was not entitled, does not constitute a breach of the agreement on her part, and cannot be made the basis of a claim that the consideration for the transfer had failed.

APPEAL from an order of the Superior Court of Fresno County declaring transfer of property not subject to inheri-tance tax. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robert A. Waring, State Inheritance Tax Attorney, and J. Paul Miller, Assistant Inheritance Tax Attorney, for Appellant.

Harris & Harris for Respondent.

SHAW, J.—This is an appeal by the state controller from an order declaring that a transfer of certain property made by the decedent, Herman Hugo Brix, in his lifetime, is not subject to an inheritance tax.

The transfers were made in the year 1913, and Brix at that time was about forty-eight years of age and in good

health. He and his wife, Helena S. Brix, had been married more than twenty years before the transfers and had accumulated a large amount of community property, real and personal. They had three children, Emma M. Brix, who was born November 17, 1893, and two other children, Carl H. Brix and Theodore F. Brix, both of whom are minors. The decedent and his said wife were living together at the time but the relations between them were strained, and she filed a suit against him for divorce about a year afterward and obtained the divorce sued for.

The transfers in question consist of the following documents, which, for convenience of reference, we have numbered.

1. A deed executed by Herman H. Brix, as grantor, conveying to Helena S. Brix, his wife, a life estate in three lots in Fresno and to said three children the remainder therein after said life estate. This deed was dated March 3, 1913, and was recorded March 4, 1913.

2. A deed executed by Herman H. Brix and Helena S. Brix, as grantors, conveying six lots in Fresno to Emma M. Brix, subject to a life estate reserved to Helena S. Brix. This deed is dated May 26, 1913, and was recorded June 9, 1913.

3. A deed executed by Herman H. Brix and Helena S. Brix, as grantors, conveying seven lots in Fresno to said three children, subject to a life estate reserved to Herman H. Brix. This deed is dated May 26, 1913, and was recorded June 9, 1913.

4. An agreement between Herman H. Brix and Helena S. Brix dated May 27, 1913. This refers to other papers executed by the parties "for the purpose of effecting a settlement of the property rights between said parties," and states that its recitals "are a part and portion of the agreements by which the parties hereto have mutually settled their respective property rights." It contains a covenant by Herman H. Brix to pay, during his lifetime, the sum of five hundred dollars per month to his said wife so long as she shall live, and after her death to the said children. It also mortgages the life estate of Herman H. Brix in the property described in deed (3), to secure payment of these monthly sums.

5. A deed executed by Helena S. Brix, as grantor, dated May 27, 1913, by which she granted to Herman H. Brix, "his heirs and assigns forever, all the right, title, and interest which the grantor herein may have or acquire in any property hereinafter acquired by conveyance, bequest, or otherwise by the grantee herein and which is so received in the name of said grantee." This deed was recorded June 3, 1914.

6. An agreement executed by Herman H. Brix and Helena S. Brix and dated May 27, 1913. This agreement recites that the parties are husband and wife and are living together as such and have accumulated properties and property interests, that they desire to divide their property interests and arrange that each shall have a separate income and that certain properties shall, on the death of the respective parties, or either of them, revert to their children. It also declares, at some length, that this agreement is to be binding whether the parties continue to live together as husband and wife or separate, and whether either of them shall secure a divorce for any reason, or shall remain husband and wife, and that it is not made in contemplation either of a divorce or of their remaining husband and wife. It also recites that the above-mentioned documents, which we have numbered (1), (2), (3), (4), and (5), have been executed to carry out the agreement of the parties, and provides that the parties "do by these presents expressly waive any and all claims which they or either of them may have to any and all property now owned by either of said parties, and each of them do further expressly waive any and all claim to any and all property which either of them may acquire in any wise," and that "either of said parties may execute and deliver good and sufficient transfers of any and all property which they may own or may hereafter acquire, without the signature of the other party thereto, and such transfers shall be treated and considered as passing a good and sufficient title to such properties, regardless of the consideration of said transfer, and each of said parties hereto do expressly waive hereby any and all interest which they, or either of them, may have in or to any or all property, real or personal, now or hereafter owned by them, or either of them, or in which they or either of them may acquire any inter-

est whatsoever.'' The agreement further declares that it is
a complete settlement of all interests which either party
may have or acquire in the property of the other, and that
each party releases the other from payment of any costs,
attorney's fees, or judgment which either might receive in
any proceeding instituted by one against the other, and
that Helena S. Brix waives any and all claims for alimony,
attorney's fees, separate maintenance, and other costs in
any divorce suit, or other suit, that may be brought by
either, and waives any claim for further division of the
property. It then provides again that it shall be binding,
independent of whether the parties live together or live
separate without a divorce, or a divorce proceeding is insti-
tuted by either.

Helena S. Brix testified that the reason her husband
gave her for the execution of the agreement was that it
was done so that he would not have to consult her about
his business matters, and that there was nothing said by
him to her about a divorce or separation in connection
with the agreement, at or before its execution. N. B. Har-
ris, who was the attorney for Herman H. Brix in the mat-
ter, testified that Brix stated to him that his purpose was
that he might be freed from the objections of Mrs. Brix
to his handling his property, and that if she did not get
a divorce he proposed to get one himself.

The inheritance tax appraiser, to whom the matter was
first submitted, made a report finding that the above-
mentioned transfers, (1), (2) and (3), were not taxable as
to the interest passing to Helena S. Brix thereby, but that
as to the remainders passing to the children they were
taxable. Upon objections by the children, the matter was
heard by the superior court, and it adjudged that none of
the transfers to the children made by said deeds, (1), (2)
and (3), was taxable. The controller has appealed from
the whole of this judgment, but states in his brief that the
appeal is not prosecuted as to the transfers numbered (1)
and (2). This leaves only transfer number (3) for con-
sideration.

As already stated, this transfer was made May 26, 1913.
The deed appears to have been fully delivered and effective
at the time it bears date. [1] The taxability of the
transfer must therefore be determined by the law in effect

at that time. (*Hunt* v. *Wicht,* 174 Cal. 209, [L. R. A. 1917C, 961, 162 Pac. 639]; *Estate of Felton,* 176 Cal. 669, [169 Pac. 362].) The law in force at that time was the act of 1911 (Stats. 1911, p. 713). That act imposes a tax on transfers ''by deed, grant, bargain, sale, assignment or gift, made without valuable and adequate consideration in contemplation of the death of the grantor, vendor, assignor or donor, or i.:tended to take effect in possession or enjoyment at or after such death.'' (Sec. 1.) The court found that the transfer under consideration was made for a valuable and adequate consideration, that it was not made in contemplation of the death of the decedent, but that it was intended to take effect in possession and enjoyment at his death.

[2] The statute clearly requires two things to subject such a transfer to the tax: First, that it be without valuable *and* adequate consideration; and, second, that it be either in contemplation of death, or intended to take effect in possession or enjoyment at death. This transfer, being subject to a life estate in the decedent, fulfills the second requirement in its second alternative, but the question is, Does it fulfill the first requirement, that is, was it made without valuable and adequate consideration?

Appellant does not deny that the consideration was valuable, but rests his case entirely on the contention that it was not adequate. The question thus arises, What does the statute mean by an adequate consideration? We are cited to *Estate of Reynolds,* 169 Cal. 600, [147 Pac. 268], as answering this question. The clause relating to the consideration first made its appearance in our inheritance tax law when the statute of 1911 was passed, but, as noted in the Reynolds case, this addition to the statute did not actually change the law but merely inserted in the statute the construction which the courts had already put upon the law without that phrase. In the Reynolds case the deceased had given to his son a store business and property worth one hundred thousand dollars, and in return therefor the son had assumed his father's debts, amounting to thirty thousand dollars, and agreed to pay his father an income of six hundred dollars per month during the father's life. At that time the father was, to the knowledge of all the parties, suffering from a mortal disease,

from which he died about four months later. The lower
court held that this transfer was made without valuable
and adequate consideration. This court, in upholding the
finding, said: "If it can be said there was any element of
valuable consideration received back by the father for his
transfer to the son, it was certainly not adequate *from any
commercial point of view.*" (Italics ours.) Appellant
bases his argument largely on the words italicized. He
also cites *Abstract & Title Guaranty Co.* v. *State,* 173
Cal. 691, [161 Pac. 264], and *Estate of Felton,* 176 Cal.
663, [169 Pac. 392]. In the first of these cases the dece-
dent, in his lifetime, had transferred all his property to
a corporation owned by his sons, in consideration of the
agreement of the corporation to care for and maintain him
during the balance of his life. At the time of the transfer
the grantor was eighty years of age and very feeble, and
his physical condition was such that his death was likely
to occur at any time, and it did occur about six months
afterward. The lower court found that this transfer was
made without valuable and adequate consideration, and this
court declared that the finding was sustained by sufficient
evidence, but did not discuss the meaning of the statute.
In the Felton case, a father had given to his son a certifi-
cate of stock in a corporation, reserving to himself the
dividends thereon during his lifetime. The certificate was
for 990 shares, but it appeared that prior to the transfer
136 of them really belonged to the son, only 728 to the
father, and the balance to others. The trial court found
that there was no adequate consideration for the transfer.
On appeal it was argued that the surrender by the son
to the father for his life of the dividends to accrue on the
136 shares belonging to the son was an adequate considera-
tion for the transfer of the 728 shares owned by the father.
This court upheld the finding that it was not adequate,
citing *Estate of Reynolds,* 169 Cal. 600, [147 Pac. 268],
and said that while the consideration granted might be
valuable, it would not be adequate.

In all of these cases it must be noted that the lower
court held the consideration inadequate and this court up-
held the finding in each case; but here the lower court has
found that the consideration was adequate, and this pre-
sents the matter to us in a different aspect. **[3]** Even

where there is no conflicting testimony, we are bound to uphold the finding if it can be supported upon any reasonable view of the evidence, although we might be inclined to think that the finding should have been the other way. The facts in the case cited are not at all like the present case and none of them can be regarded as controlling here.

The statement in *Estate of Reynolds, supra,* that the consideration was not adequate from a commercial point of view was not intended as a complete definition of adequacy of the consideration, but merely to indicate that the particular transaction there considered, being a sale of a going business, must be regarded from the same point of view as any commercial transaction. The Inheritance Tax Act of 1917 defines the phrase "valuable and adequate consideration" as "a consideration equal in money or in money's worth to the full value of the property transferred." (Stats. 1917, p. 882, sec. 2, subd. 3.) Appellant claims that this amendment, like those considered in *Estate of Reynolds, supra,* serves but to clarify without changing the pre-existing law. If the provision that such consideration must be "equal" in money or money's worth to the full value of the property does in any wise change the previous rule on the subject, the amendment cannot be applied to this case, which arose before its enactment. The use of the word "valuable" in the act of 1911, excludes considerations of love and affection such as were referred to in *O'Hara* v. *Wattson,* 172 Cal. 525, [157 Pac. 608], and in *Magee* v. *Magee,* 174 Cal. 281, [162 Pac. 1023], both of which were equity cases. But in other respects the court must view the transactions as they appeared to the parties and consider the conditions under which they acted and their purposes in the matter. **[4]** We think the rule applicable in specific performance cases, so far as the mercenary side of it is concerned, should control. Considering the transactions in that light, this transfer, as will be shown, was made for an adequate consideration "in money's worth."

A contract cannot be specifically enforced against a party unless he has received an adequate consideration therefor. (Civ. Code, sec. 3391.) But it is well established that this section does not require exact equality of

consideration. In *Dore* v. *Southern Pacific Co.,* 163 Cal. 196, [124 Pac. 822], we said the rule as to adequacy of consideration requires "that the value of the land and the price to be paid are in reasonable approximation to equality. (Citing cases.) If the other party, with knowledge of such inequality as there may be, nevertheless desired to and freely did enter into the contract without any unfair advantage being taken of him, it will not be deemed inequitable as to him." In *O'Hara* v. *Wattson,* 172 Cal. 525, [157 Pac. 608], the matter of adequacy of consideration, as it relates to the specific performance of contracts, was carefully considered by this court and we there said on rehearing:

"It will not do to say that the consideration must be held inadequate unless the value of the property at the time of the contract, as the court finds it to be, exactly or even substantially equals the price fixed by the contract. The court must ascertain the value from the evidence, which ordinarily consists mainly of the opinions of witnesses. There are few subjects on which witnesses are more likely to differ than that of the value of property, and few are more difficult of satisfactory determination. Exact accuracy is not to be expected. And after the value is determined, the question of adequacy is not necessarily settled thereby, for other circumstances may affect the question. Undoubtedly the relations of the parties, and their love, affection, or regard for each other, as well as the object to be attained by the contract, may be given some effect. Just how far such matters should incline a court, in its sound discretion, to conclude that a price less than the value as found, is, nevertheless, adequate to justify specific performance, we cannot state by any general formula of words." Again, in *Schader* v. *White,* 173 Cal. 446, [160 Pac. 560], where the lower court had found the consideration to be adequate, this court affirmed the decision, saying: "Adequacy of price does not mean equality of price. An adequate consideration does not mean a consideration measuring to the fullest extent up to the value of the property. Each case must rest for determination upon its own facts, and equity will find adequacy or inadequacy after considering all of the circumstances appearing in each particular case.".

Turning now to the facts of the case, appellant claims that the only consideration received by the decedent for the transfer in question was a waiver by his wife of all her interest in the community property, and that this is not an adequate consideration, calling our attention in this connection to *Spreckels* v. *Spreckels,* 172 Cal. 775, [158 Pac. 537], and *Dargie* v. *Patterson,* 176 Cal. 714, [169 Pac. 360], and other earlier cases, holding that the title to the community property is in the husband and that the wife has, during coverture, no more than a mere expectancy like that of an heir. This rule is not determinative of the present case. **[5]** While the wife has no title to the community property nor estate or interest therein, yet she has rights in relation thereto, the surrender of which may constitute a valuable and, according to the circumstances of the case, an adequate consideration for the transfer. She has a "possible interest in whatever remains upon the dissolution of the community otherwise than by her own death." (*In re Burdick,* 112 Cal. 393, [44 Pac. 735].) **[6]** Upon the death of the husband she takes one-half of the community property and upon a divorce she may, in a proper case, be awarded even the whole of it. (Civ. Code, secs. 146, 1402.) If a divorce is granted without any disposition of the community property the former wife becomes the owner of one-half of the community property as tenant in common with her former husband. (*De Godey* v. *De Godey,* 39 Cal. 157; *Biggi* v. *Biggi,* 98 Cal. 35, [35 Am. St. Rep. 141, 32 Pac. 803]; *Hirschner* v. *Dietrich,* 110 Cal. 502, [42 Pac. 1064].) **[7]** If the husband makes a gift of community property without the wife's consent she may upon his death recover from the donee one-half of the property so given. (Civ. Code, sec. 172; *Dargie* v. *Patterson, supra.*) The fact that she may thus attack a conveyance by the husband made without her consent, on the ground that it was a gift, has a practical application that renders it a great disadvantage to a husband not in cordial relations with his wife. **[8]** It has become the universal custom with purchasers of real property to insist on her signature to all contracts relating thereto. The custom is so general that it is a matter of common knowledge of which the court may take judicial notice. (16 Cyc. 873; *Irwin* v. *Phillips,* 5 Cal. 146, [63 Am. Dec. 113]; *Goldsmith* v. *Sawyer,* 46 Cal. 212; *Storrs* v. *Los Angeles Traction Co.,*

134 Cal. 94, [66 Pac. 72]; *Grogan* v. *Chaffee,* 156 Cal. 611,
[27 L. R. A. (N. S.) 395, 105 Pac. 745].) In the actual
dealings of the husband in community real estate this gives
her a practical control or power of interference which may
be a great burden to him. Where a husband and wife are
not in accord, but live in strained relations, as was the case,
here, the adjustment of their relationship as to property so
that this power of the wife to control, object, or interfere
is taken away, may be a consideration of very great pecu-
niary value to the husband and fully adequate for a trans-
fer of valuable real estate.

The agreement, pursuant to which the transfer in ques-
tion was made, amounted to more than a mere surrender
by the wife of her interest in the community property. It
was a complete alteration of the property relations between
the parties, as authorized by section 159 of the Civil Code.
Taking all the various documents together, they constituted
an entire transaction by which the decedent and his wife
provided for her support, divided their property interests
and settled and released all claims which either might or
could have in the property of the other. The wife also
thereby gave up the right which she would have by law to
support out of her husband's property, other than that pro-
vided by the agreement, and her rights to alimony, costs,
and attorney's fees in any divorce suit or separate main-
tenance or other suit between them. The testimony and
the language of the agreement itself, coupled with the fact
that their relations were strained, show that the parties
contemplated a divorce as a possibility. In fact, the wife
did obtain a divorce a little more than a year afterward.
If this agreement had not been made she could have main-
tained a claim in her divorce suit for an award of at least
one-half of the community property, besides attorney's fees,
costs and alimony. The evidence shows that the decedent
at that time was possessed of property worth between five
hundred thousand dollars and six hundred thousand dol-
lars. He died only two years and four months afterward.
The property transferred to the children, subject to a life
estate in the wife, was worth forty-five thousand dollars;
that transferred to the daughter, subject to a life estate
in the wife, was worth thirty thousand dollars, and the
property transferred to the children, subject to a life es-

tate in the decedent by deed (3) was worth two hundred and forty thousand dollars. At his death the property still remaining in his hands was appraised at two hundred and fifty-nine thousand dollars, making a total of five hundred and seventy-four thousand dollars. Of this estate he conveyed the whole fee in property worth only seventy-five thousand dollars, agreed to pay an allowance of five hundred dollars per month during his life, and parted with the remainder here in question in property worth two hundred and forty thousand dollars; while on the other hand he retained in sole ownership property worth two hundred and fifty-nine thousand dollars, retained a life estate in property worth two hundred and forty thousand dollars and obtained a release of his wife's claims, not only to the property he retained, but to all other property which he might thereafter acquire, and became free from her interference in any dealings he might wish thereafter to make in property. We have no evidence of the value of the life estate of the decedent or of the annuity which he agreed to pay, but if it is computed according to the mortality tables on a five per cent interest basis, taking the age of the decedent at forty-seven years, the present value in May, 1913, of the decedent's life estate would be $144,240 and that of the annuity of six hundred dollars per year would be $72,120. The value of the remainder is the difference between the whole value of the property transferred, three hundred and fifteen thousand dollars, and that of his life estate, $144,240, which amounts to $170,760. The summary of the matter is that he parted with property worth $170,760, and assumed an obligation to pay sums equivalent to a present payment of $72,120, in consideration whereof he got a release from all of his wife's claims and power of interference, and retained property valued at $403,240. [9] We think the foregoing facts are sufficient to support the finding that there was a valuable and adequate consideration for the transfer in question. A part of the consideration is not susceptible of exact valuation in money. Who can say how much it was worth to him in money, to have his marital troubles settled in this way? He had a just expectancy of many years of life. It is apparent that the parties looked at the transaction from a pecuniary and not a sentimental standpoint. They evi-

dently regarded the consideration as adequate and they were in a much better position to place a value thereon than is this court.

Appellant seems to concede that the transfers made by deeds (1) and (2) were supported by an adequate consideration, for he makes no attack on the finding with regard thereto, but confines his objection to deed (3). No such distinction can be drawn between these various deeds. They constitute, with the other documents mentioned, a single transaction, to all parts of which the consideration extends in equal measure. No line can be drawn enabling us to say that while one part of the transaction is supported by an adequate consideration, another part lacks such support.

[10] Appellant also argues that the consideration for the transfer has failed because the former wife of the decedent is now claiming the share of his property which he gave her by his will. In support of this argument he makes several assertions of fact which do not appear in the record and which, of course, we cannot consider. The record shows only that the decedent left a will, made before the property settlement, by which he gave all his property to his wife, but declared that the children were to have their share as soon as they became of age, and that the inheritance tax appraiser has found that the wife takes one-half of the property passing by the will and has assessed an inheritance tax against it. This is not sufficient to show that she is claiming under the will. She would have a right to one-half of the community property regardless of the will. At all events her claim against the property now is one made in fact against the heirs and her mere effort to obtain property to which, under the agreement, she is not entitled, would not constitute a breach of the agreement on her part. It contains no covenant that she will not make or assert any unfounded claim.

The judgment is affirmed.

Olney, J., and Lawlor, J., concurred.