[S. F. No. 9232.  In Bank.—June 27, 1921.]

In the Matter of the Estate of FRANK PAUSON, Deceased. SAMUEL B. PAUSON et al., Appellants, v. JOHN S. CHAMBERS, Controller, etc., Respondent.

[1] INHERITANCE TAX—GIFT IN CONTEMPLATION OF DEATH—QUESTION OF FACT—APPEAL.—The question of whether or not a gift is made in contemplation of death within the meaning of the Inheritance Tax Law is a question of fact, and if from the evidence the trial court can properly infer that the transfer was or was

----

1. Succession tax upon gift or transfer in contemplation of death, notes, 14 Ann. Cas. 109; Ann. Cas. 1915B, 1089; 18 L. R. A. (N. S.) 458; 46 L. R. A. (N. S.) 790.

not made in contemplation of death, the finding will not be disturbed on appeal even though the appellate court might reach a different conclusion on the same evidence.

[2] ID.—DETERMINATION OF QUESTION—IMPORTANT CONSIDERATIONS.— In determining whether a gift was made in contemplation of death within the meaning of the Inheritance Tax Law, the old age of the donor is an important consideration, and the fact that he transferred all of his property or sought to do so, that his fortune was large and that the transfer was made for the benefit of his heirs and in such fashion that as president of the corporation to which it was transferred he still had the management and control and received from the income of the property an amount fully commensurate with his customary expenditures, are most significant.

[3] ID.—TRANSFER IN CONTEMPLATION OF DEATH—DEFINITION OF PHRASE—INHERITANCE TAX LAW OF 1911.—In view of the definition of the phrase "in contemplation of death" contained in section 27 of the Inheritance Tax Law of 1911 (Stats. 1911, p. 726), which is intended to cover all dispositions of property without valuable and adequate consideration, substantially testamentary in character, a gift made in lieu of making a will and to accomplish substantially the same purpose is subject to tax.

[4] ID.—GIFT IN CONTEMPLATION OF DEATH UNDER LAW OF 1911— SUFFICIENCY OF EVIDENCE.—A finding that a gift was made in contemplation of death within the meaning of the Inheritance Tax Law of 1911 is amply sustained by evidence that the donor, who was of the age of seventy-eight years, transferred all of his property of large value to a newly organized corporation in consideration of the entire capital stock, which he distributed among his children, and that he was elected president of the corporation on a salary sufficient to pay the household expenses of himself and his family and his own personal expenses.

[5] ID.—FIXING OF TAX—JURISDICTION OF SUPERIOR COURT SITTING IN PROBATE—CONSTRUCTION OF LAW OF 1911.—In view of sections 15 and 16 of the Inheritance Tax Law of 1911, which specifically authorizes the probate court to fix a tax upon property transferred in contemplation of death to any person taking any property under probate proceedings, the superior court sitting in probate, although its jurisdiction is a limited and statutory one, has jurisdiction to fix a tax on property transferred in contemplation of death, where the donees take by virtue of the probate proceedings as well as by the transfer.

3. Constitutionality, construction, and effect of legislative definition of gift or transfer in "contemplation of death," note, 4 A. L. R. 1523.

[6] Id.—Appearance of Parties—Contest of Application for Fixing Tax—Appeal—Jurisdiction not Attackable.—Where the parties appear without objection in opposition to the application of the fixing of a tax upon property claimed to have been transferred in contemplation of death and litigate the question, they cannot be heard to complain on appeal that the court was without jurisdiction.

APPEAL from an order of the Superior Court of the City and County of San Francisco fixing an inheritance tax. John T. Nourse, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Weil and Harris F. Shaw for Appellants.

James L. Atteridge, Robert A. Waring, H. C. Lucas and A. W. Brouillet for Respondent.

Garret W. McEnerney, *Amicus Curiae.*

WILBUR, J.—This is an appeal from an order of the superior court fixing an inheritance tax upon certain property transferred by the deceased, Frank Pauson, upon the ground that such transfer was made in contemplation of death. At the time of the transfer the decedent was seventy-eight years of age and in vigorous health. He consulted an attorney, stating to the attorney that it was his intention to transfer all his property to a corporation to be organized under the name of Frank Pauson & Sons. Pursuant to this intention such corporation was organized, the deceased transferred to it about six hundred thousand dollars' worth of property in consideration of the entire capital stock of the corporation, forty shares of which were issued to each of his four sons and twenty each to four daughters, and one share to the deceased. Three daughters who received twenty shares each had in 1913 received a gift of fifty thousand dollars each and the method of distributing the shares adopted was to equalize the amount received by each child. The shares were issued December 8, 1915. At the organization meeting of the corporation the deceased was elected president and voted a salary of twenty thousand dollars per annum. This amount was intended to pay the household expenses of the members of the family, which consisted of the father

and the adult children, except one daughter, and also to pay the personal expenses of the father. It subsequently developed that, due to an oversight, $42,339.15 worth of property had not been transferred to the corporation and remained a part of decedent's estate at the time of his death. The deceased died November 26, 1916, less than one year after the organization of the corporation, but from a sudden acute illness.

The question is whether or not the finding of the trial court that this gift was made in contemplation of death within the meaning of the statute in force at the time of the transfer, namely, the Inheritance Tax Law of 1911 (Stats. 1911, p. 713) is sustained by the evidence. [1] At the outset it should be borne in mind in considering this case and determining the effect of the decisions heretofore rendered by this and other courts upon the subject, that the question of whether or not a gift is made in contemplation of death is a question of fact, and that if from the evidence the trial court can properly infer that the transfer was or was not made in contemplation of death, the finding of the trial court would not be disturbed even though the conclusion of the appellate court on the same evidence might be different. [2] The appellant asserts that the sole question in this case is whether or not it must be held as a matter of law that a transfer made by a person seventy-eight years of age is, because of his age alone, to be deemed a transfer in contemplation of death. It is true, of course, that the age of the donor is an important consideration. The fact that he transferred all of his property or sought to do so; that it was a very large fortune, appraised at the time of his death at $939,065.34; that the transfer was made for the benefit of his heirs and in such fashion that as president of the corporation he still had the management and control of his property and received from the income thereof an amount fully commensurate with his customary expenditures are most significant.

The phrase "transfer in contemplation of death" has been a subject of much litigation, and we are informed by the briefs that every case involving that question that can be found in the United States has been therein presented to us for our consideration. This phrase is found in the inheritance or transfer tax legislation in many states—Pennsyl-

vania, New York, Illinois, Wisconsin, Indiana, Iowa, Michigan, Georgia, and California. The New York courts gave a very narrow construction to the phrase "transfer in contemplation of death," treating it practically as an equivalent of a gift *causa mortis.* (*Matter of Seaman,* 147 N. Y. 69, [41 N. E. 401] ; *Estate of Reynolds,* 169 Cal. 600, 603, [147 Pac. 268].) The other states have refused to follow the New York courts and without exception have taken a more liberal view. Appellant claims that the general effect of all such decisions is that the phrase "in contemplation of death" means "in contemplation of an impending death."

The brief filed by *amicus curiae* thus states the rule contended for by the appellant: "It is apparent from the foregoing review of the history and interpretation of the term 'contemplation of death' that a gift is made in contemplation of death only 'when the donor is looking forward to his death as impending.' " The rule is also stated by *amicus curiae* as follows: "It has also been universally held that even though gifts, other than deathbed gifts, may be taxable, nevertheless it is necessary to constitute a transfer in contemplation of death, that the grantor be so ill or infirm as to warrant a finding that he was looking forward to his death as impending when he made the gift."

However, the phrase "in contemplation of death" is defined in the Inheritance Tax Law in force at the time of the transfer under consideration in this case. In the Inheritance Tax Law of 1911 (Stats. 1911, sec. 27, p. 726), after defining the words "estate," "property," "transfer," "decedent," "county treasury," "district attorney," and "Inheritance Tax Appraiser," the following definition occurs: " . . . 'Contemplation of death,' as used in this act, shall be taken to include that expectancy of death which actuates the mind of a person on the execution of his will, and in nowise shall said words be limited and restricted to that expectancy of death which actuates the mind of a person in making a gift *causa mortis;* and it is hereby declared to be the intent and purpose of this act to tax any and all transfers which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws."

In the *Estate of Reynolds,* 169 Cal. 600, [147 Pac. 268], the definition of "contemplation of death" contained in section 27 of the act of 1911 is quoted with the following

comment: "This amendment also served the purpose of elucidating without changing the law, by giving fuller expression to the legislative intent and meaning." In that case, however, the transfer under consideration was made in April and May, 1911, and the statute of 1911 did not go into effect until July 1, 1911. The statement is, therefore, *obiter dictum*. It also appeared in that case that the decedent at the time of the transfer was suffering from a sarcoma; that he had undergone several surgical operations which had failed to eradicate the sarcoma. One of the gifts held liable to tax was made two days before a critical operation for the amputation of the right leg at the hip. Others were made after the recovery from the effects of the operation but after he had begun again to fail. These transfers to the wife were made by decedent prior to and following an operation considered absolutely necessary to save his life. It was said: "It would seem to be clear beyond peradventure that as to these transfers, they were made in that contemplation of death which the law designates, and that they were gifts in life substituted for gifts by will." The transfers to the son, also involved, were made when he knew that he was in failing health and "It was known, and he knew, that his tumor had returned and that the days of his life were numbered . . . " The court concluded: "Indeed, it seems quite plain that, as in the case of the widow, so in the case of the son, the father, in contemplation of death, was transferring by gift instead of devise the valuable business which he owned and had theretofore conducted." It is obvious from the foregoing that the finding of the trial court in that case was justified even under the rule contended for by the appellant and *amicus curiae* in this case. The case is not authority as to the interpretation of the law of 1911.

We see no particular difficulty in the interpretation of the law of 1911 when construed in the light of the general purpose of the legislature in imposing such taxes and in the light of the interpretation theretofore placed upon the phrase "in contemplation of death" and in view of the litigation then pending in this state in which the meaning of that phrase was involved. The general purpose of the inheritance tax law as stated in the act is as follows: "To tax any and all transfers which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws."

In other words, the taxing of transfers was purely ancillary to and in aid of taxes imposed upon the right of succession, the purpose of such ancillary legislation being to tax transfers which were made in lieu of succession or testamentary disposition. That the object of such imposition of taxes upon transfers made in contemplation of death is to prevent the evasion of laws imposing a tax upon the right to succeed to an estate at death is conceded in all the cases. It is obvious that this purpose is not achieved when the phrase "transfers made in contemplation of death" is limited, as in New York, to gifts *causa mortis*. This court, in the *Estate of Reynolds, supra,* declined to follow this narrow view. It is equally obvious that the legislative intent will be frustrated if the transfer in order to be taxable must be made with a sense of impending death, for under this view no tax can be collected where a donor in expectation of death and for the purpose of vesting title in his heirs makes a transfer *inter vivos* with no contemplation of death other than that involved in arranging his affairs so that when the contemplated event occurs the property will be distributed or vested in accordance with his wishes in that event. To put the matter more concretely, if the phrase "contemplation of death" is to receive the narrow construction contended for by appellants, it would be possible for a man seventy-eight or ninety-eight years of age to organize a corporation and transfer all his property thereto without consideration, issue the stock to his heirs in the proportion he desires them to succeed to upon his death, and for the purpose of effecting such succession, and thus evade or avoid all inheritance taxes on such transfer because he was in good health at the time of the transfer, and has no warning that indicates to his mind that death is impending, although he knows that his life expectancy is short and is making such arrangement with that fact in mind. Substantially this view was taken by the supreme court of Wisconsin in *State* v. *Thompson,* 154 Wis. 320, [Ann. Cas. 1915B, 1084, 46 L. R. A. (N. S.) 790, 142 N. W. 647], in sustaining the finding of the trial court that a gift by the decedent, Joseph Dessert, of five hundred thousand dollars to his daughter, partly made when he was eighty-nine and partly when he was eighty-seven and one-half years of age, was not made "in contemplation of death." The legislature of that state, however, immediately amended

the law (Laws 1913, sec. 1087-1, subd. 3) by adding the following: "Every transfer by deed, grant, bargain, sale or gift, made within six years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall be construed to have been made in contemplation of death within the meaning of this section." The supreme court of Wisconsin held in *Estate of Ebeling,* 169 Wis. 432, [4 A. L. R. 1519, 172 N. W. 734], that the law conclusively established the taxability of such a gift, and with reference to the decision in *State* v. *Thompson, supra,* said:

"The circumstances of that case forcibly brought to the attention of the legislature the fact that after a person had attained the age of eighty-nine years, an age when he could not expect to live many more years, when his thoughts, naturally, were consumed rather with the disposition of property already accumulated than with the accumulation of more, he could bestow his property upon the objects of his bounty and thus evade the inheritance tax. . . .

"It is clear to our minds that the legislature intended to define what should constitute a transfer in contemplation of death. It was the legislative purpose to make the statute effective. It realized that if a person after reaching the age of eighty or ninety years could dispose of his property free from the tax, it could be easily evaded by those possessing the larger fortunes. So it was enacted not only that the tax should apply to gifts made in contemplation of death but to gifts made within six years prior to death."

[3] It is equally clear that our legislature of 1911 intended to define the phrase "in contemplation of death" so as to cover, among other things, all dispositions of property "without valuable and adequate consideration," substantially testamentary in character (see sec. 27, *supra,* Stats. 1911, c. 395, p. 726), or, to use the language of the statute, to tax "all transfers which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws." The statutory definition of the phrase, contemplation of death, includes, first, "that expectancy of death which actuates the mind of a person upon the execution of a will," and, second, is in nowise to "be limited and restricted to that expectancy of death which actuates the mind

of a person in making a gift *causa mortis*," and, third, "it is hereby declared to be the intent and purpose of this act to tax any and all transfers [and this includes transfers in contemplation of death] which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws." The phrase "all transfers" in this clause certainly includes transfers made "in contemplation of death." It is clear from a consideration of this definition that it was thereby intended to cover transfers made by a donor in lieu of a transfer by will. The characteristic phrase used for centuries as indicating the mental attitude of the testator in making a will is that he is of a sound and disposing mind and memory, that is to say, the testator of sound mind is also of a mind to direct the disposition of his property at and after his death. A somewhat different introductory phrase is sometimes used in a will as follows: "Having in mind the uncertainty of life and the natural rights of others and my obligations to them, and it being my intention and purpose to dispose of all the property, real, personal and mixed, which I may own at the time of my death," etc. (3 Alexander's Commentaries on Wills, 2669.) If the donor in that frame of mind decides that he will make a gift in lieu and instead of making a will and to accomplish substantially the same purpose he would accomplish by a will, such a transfer clearly comes within the scope of the statute in question. There is nothing inconsistent with this view in the decision in *Estate of Minor*, 180 Cal. 291, [4 A. L. R. 456, 180 Pac. 813], where the transfer was made to the transferee in contemplation of marriage, or in the decision in *Kelly* v. *Woolsey*, 177 Cal. 325, [170 Pac. 837]. Neither of these decisions, however, involved the law of 1911, although in *Estate of Minor* it is said that the result would be the same under the law of 1911 as under the law in force at the time of the transfer (1908). In *Spreckels* v. *State*, 30 Cal. App. 363, [158 Pac. 549], the transfer was made when the Inheritance Law of 1905 (Stats. 1905, p. 341) was in force, and the case of *McDougald* v. *Wulzen*, 34 Cal. App. 21, [166 Pac. 1033], arose under the same statute. Neither case required a construction of the statutory definition of the phrase "in contemplation of death" and both affirmed the conclusion of fact drawn by the trial court that the transfers were not made in contem-

plation of death, as sufficiently supported by the evidence, and, hence, not to be disturbed by the appellate court. In both cases it is conceded that the judgment would have been affirmed on the same evidence if the conclusion of the trial court as to the fact had been exactly opposite. In the case at bar the finding is in favor of the tax, and must be sustained if supported by the evidence.

We are urged to consider the history of the phrase "contemplation of death," as used in our own statute defining a gift *causa mortis* (Civ. Code, secs. 1149, 1150), and the construction placed upon that phrase by other courts and at common law, as authority for its construction in the Inheritance Law. The express declaration of the legislature of 1911 that the words in that statute shall not be limited and restricted to that expectancy of death which actuates the mind of a person making a gift *causa mortis* would seem to dispose of this contention. Moreover, in considering the interpretation to be placed upon our own statute and its definitions, we must recognize that the amendment of the Inheritance Tax Law in nearly every session of the legislature (Stats. 1893, p. 193; Stats. 1895, p. 33; Stats. 1897, p. 77; Stats. 1899, p. 101; Stats. 1903, pp. 55, 268; Stats. 1905, pp. 341, 374; Stats. 1909, p. 557; Stats. 1911, p. 713; Stats. 1913, p. 1066; Stats. 1915, pp. 418, 435; Stats. 1917, p. 880) has been largely at the instance of attorneys acting for the state or its various officers engaged in collecting its tax, and that such amendments have been made to clarify the law and to meet the contentions of those opposing the collection of the tax, and that such legislation has sometimes been obtained before this court or any other has passed upon the contentions of the parties, thus attempting by legislation to settle the question for all future taxation at an earlier period than, in view of our congested calendar, it has been possible for this court to determine such questions. Some of these amendments have been thereafter shown to be unnecessary and, as stated in *Estate of Reynolds,* 169 Cal. 600, [147 Pac. 268], merely declaratory of the law as it already existed. Others have extended the law to cases not originally included. We think the change in the Inheritance Law of 1911 was of the latter character. [4] At any rate, it is clear in this case that the trial court in holding that the gift in question was made in contemplation of death was amply sustained by the evidence.

[5] The appellants contend that the superior court sitting in probate had no jurisdiction to fix a tax on property transferred prior to the death of the decedent. There is no doubt that the jurisdiction of the superior court sitting in probate matters is a limited and statutory one (*In re Haas*, 97 Cal. 232, [31 Pac. 893, 32 Pac. 327]; *Ryder's Estate*, 141 Cal. 368, [74 Pac. 993]), but sections 15 and 16 of the Inheritance Tax Law (Stats. 1917, c. 589), specifically authorize the probate court to fix a tax upon property transferred in contemplation of death "to any person, institution or corporation taking any property under and by virtue of said probate proceedings." This provision of the statute refers to a situation such as that presented by the record in this case where the children all took property by virtue of the probate proceedings as well as by the transfer. [6] Moreover, the parties appeared without objection in opposition to the application for the fixing of a tax upon the property transferred and litigated the matter. As we have no separate probate court and the right to a tax was litigated under the application of the state controller and the objections thereto in the superior court, a court having general jurisdiction under the constitution of such matters, such parties so appearing cannot now be heard to complain that the court was without jurisdiction. The court had jurisdiction of the subject matter and of the parties.

The order of the court declaring the tax a lien upon the shares of stock theretofore transferred to the children was merely declaratory of the law. It does not appear that the stock was to be taken possession of by the court or by any officer connected with the court for the purpose of executing the judgment.

Judgment affirmed.

Olney, J., Angellotti, C. J., Sloane, J., Lawlor, J., and Lennon, J., concurred.

Shaw, J., deeming himself disqualified, did not participate in the foregoing opinion.

Rehearing denied.

All the Justices concurred, except Shaw, J., who did not participate, and Wilbur, J., who was absent.