WENDELL W. FISH AND NEIL H. MARSH, EXECUTORS OF THE ESTATE OF H. H. FISH, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33993, 48383.　Promulgated March 24, 1933.

*Ralph W. Smith, Esq.*, and *Claude I. Parker, Esq.*, for the petitioners.

*R. W. Wilson, Esq.*, for the respondent.

**OPINION.**

SMITH: The filing of the estate and gift tax returns with respect to the same property is explained by the petitioners on brief as follows:

* * * Upon the death of Mr. Fish, the Berkeley attorney, who was a general practitioner and not acquainted with the demands of the revenue laws, prepared and filed only a federal estate tax return. Not any of the parties in interest were aware of the gift tax statute. It was only while the federal estate tax return was being audited that the examining officer suggested a gift tax return should be filed. Upon this direction and more than a year after decedent's death a Return of Federal Gift Tax, Form 706 (a) was duly filed. Under the Federal Estate Tax return, a tax was paid in accordance with the value of the net estate therein indicated. Also the tax was paid as disclosed on Form 706 (a). The Commissioner, however, has declared deficiencies in each of the taxes, i. e., the federal estate tax and the gift tax. From these deficiencies the appeals resulted. * * *

The petitioners contend that the community property involved in these proceedings was improperly included in the decedent's gross estate, and that only that portion (an undivided one-half interest) conveyed to the six children in 1924 is subject to the gift tax. The respondent contends that all of the community property was subject to the estate tax, and that all of the same property was subject to the gift tax. The parties have stipulated that the community prop-

erty in question had a fair market value of $300,000, which we assume is the agreed value as of the date of the alleged gifts (September 23, 1924), and as of the date of the decedent's death (August 26, 1925). The decedent's wife testified that this was " purely community property," and it appears that she did not contribute any of her separate property in the acquisition of the community property involved in these proceedings.

It is well settled that a wife's interest in California community property is included in the husband's gross estate. *Talcott* v. *United States*, 23 Fed. (2d) 897; *Henshaw* v. *Commissioner*, 31 Fed. (2d) 946; *Title Insurance & Trust Co.* v. *Goodcell*, 60 Fed. (2d) 803. But for the alleged gifts in September 1924, there would be no question in the instant proceedings as to the incidence of the estate tax upon the property involved. By amendments to the petitions, the petitioners duly allege that the transfers were not made in contemplation of death, and, in effect, assert that the transfers in September 1924, are not within the purview of section 302 (c) of the Revenue Act of 1924, by the terms of which property so transferred is to be included in a decedent's gross estate unless shown to have been neither in contemplation of death nor to take effect in possession or enjoyment at or after death. The facts do not take the transfers outside the ambit of the statute.

It should be noted in these proceedings that there is no question before us as to whether there was a gift of the property by the decedent to his wife and children on September 23, 1924. The respondent admits so much of the petition in Docket No. 33993 " as alleges that prior to the death of the decedent on September 23, 1924, he transferred a portion of his property, a one-half interest therein, to his wife, and the other one-half interest therein to his children in equal shares, as more fully appears from Schedule E of the return on Form 706."

With respect to the liability to estate tax upon the property transferred on September 23, 1924, it is to be noted that the decedent, although at that time in comparatively good health, had been advised by his physician that he had hardening of the arteries. He had engaged in no active business since 1907, but occupied himself in his garden and in the management of his investments. He continued the management of the property transferred in September 1924, after the transfer, the same as before. The income from the property was deposited in a joint account with his son. In the circumstances of the case we are of the opinion that the transfers of property on September 23, 1924, were made in contemplation of death within the meaning of the statute. *Heiner* v. *Donnan*, 285 U. S. 312; *United*

*States* v. *Wells*, 283 U. S. 102. In the *Wells* case the Supreme Court said:

\* \* \* The statutory description embraces gifts *inter vivos*, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. *The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax.* Nichols v. Coolidge, 274 U. S. 531, 542, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; *Milliken* v. *United States*, 283 U. S. 15, 51 S. Ct. 324, 75 L. Ed. —. decided March 2, 1931. As the transfer may otherwise have all the indicia of a valid gift *inter vivos*, the differentiating factor must be found in the transferor's motive. \* \* \*

As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and *purposes associated with life*, rather than with death, *may motivate the transfer*. The words " in contemplation of death " mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is " near at hand."

\* \* \* \* \* \* \*

\* \* \* There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and 'thus to give effect to the manifest purpose of the statute. [Italics supplied.]

In the *Wells* case the transfers were found not to have been motivated by the state of the decedent's health at the time of the gifts, but that " the immediate and moving cause of the transfers was the carrying out of a policy, long followed by decedent in dealing with his children of making liberal gifts to them during his lifetime " and intended by the donor " to accomplish some purpose desirable to him if he continues to live." There, the decedent had given much of his property to his children during his lifetime to see how they would handle it, and, as he said, " I will then know when my time is up what I ought to do with the balance." Here, there is no evidence of such a policy on the part of the decedent, who retained possession and management of and received the proceeds from the property in controversy. When asked if she and the decedent discussed, at the time the deeds were executed, " any reason why they should not be

recorded and the properties and its management turned over to the children?," Mrs. Fish said:

I think it was a matter of pride with Mr. Fish; he was quite a well known man; he was mayor of Bakersfield for eight years * * *

\* \* \* \* \* \* \*
\* \* \* he did not want it done.

The evidence does not overcome the presumption of the correctness of the respondent's determination that the gifts were made in contemplation of death.

Although we have found that the gifts or transfers in September 1924, were made in contemplation of death, and subject to the estate tax, it is nevertheless necessary to determine whether or not the gift tax has been properly levied. In so far as material hereto, the Revenue Act of 1924, as amended by the Revenue Act of 1926, is as follows:

SEC. 319. For the calendar year 1924 and each calendar year thereafter, a tax equal to the sum of the following is hereby imposed upon the transfer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly * * *. [The rates applicable are set forth in section 324 (a) of the Revenue Act of 1926, which amended this section.]

SEC. 320. If the gift is made in property, the fair market value thereof at the date of the gift shall be considered the amount of the gift, * * *

SEO. 321. In computing the amount of the gifts subject to the tax imposed by section 319, there shall be allowed as deductions:

(a) In the case of a resident—

(1) An exemption of $50,000.

\* \* \* \* \* \* \*
SEO. 322. In case a tax has been imposed under section 319 upon any gift, and thereafter upon the death of the donor the amount thereof is required by any provision of Part I of this title to be included in the gross estate of the decedent then there shall be credited against and applied in reduction of the estate tax, which would otherwise be chargeable against the estate of the decedent under the provisions of section 301, an amount equal to the tax paid with respect to such gift; * * *

The gifts in question were made after the enactment of the Revenue Act of 1924 and are therefore subject to the gift tax imposd by Part II of Title III of that act. _Untermyer_ v. _Anderson_, 276 U. S. 440; _Blodgett_ v. _Holden_, 276 U. S. 594; _Bromley_ v. _McCaughn_, 280 U. S. 124; _Harold T. White et al., Executors_, 15 B. T. A. 1417; _Victor Weichman_, 20 B. T. A. 616. On brief, the petitioners admit that the property transferred to the six children is subject to the gift tax, but contend that, in effect, Mrs. Fish purchased the property transferred to her for an adequate and valuable consideration, to wit, the relinquishment of her interest in the community property and her consent to the gifts to the children. They state that " it is

our contention that the value of the interest of the husband should be measured by one-half the value of all the community property." Similar contentions with respect to an alleged purchase by the wife were of no avail in *Title Insurance & Trust Co.* v. *Goodcell, supra,* where the court refused to limit the incidence of the estate tax to one-half of the community property, because at the husband's death " property rights were brought into being or ripened for the survivor which before could not be exercised." Likewise here, by the gifts, Mrs. Fish acquired property rights " which before could not be exercised."

In *Blethen* v. *Pacific Mutual Life Ins. Co.,* 243 Pac. 431, 434, the Supreme Court of California said:

> The husband is the owner of the community property, and the interest of the wife therein is but a mere expectancy. *Van Maren* v. *Johnson,* 15 Cal. 308, 311; *Tolman* v. *Smith,* 24 P. 743, 85 Cal. 280; *Spreckels* v. *Spreckels,* 48 P. 328, 116 Cal. 339, 36 L. R. A. 497, 58 Am. St. Rep. 170; *Spreckels* v. *Spreckels,* 158 P. 537, 172 Cal. 775; *Winchester* v. *Winchester,* 165 P. 965, 175 Cal. 391; *Estate of Brix,* 186 P. 135, 181 Cal. 667; *Dargie* v. *Patterson,* 169 P. 360, 176 Cal. 714; *Roberts* v. *Wehmeyer,* 218 P. 22, 191 Cal. 601. Certain statutory limitations for the protection of the wife have, however, been placed upon his power of disposal.

> Thus, by section 172 of the Civil Code, the husband is expressly prohibited from giving away any part of the community personal property without the written consent of the wife. This restriction on the husband's power of disposal does not, however, vest any interest in the community property in the wife. *Spreckels* v. *Spreckels,* 158 P. 537, 172 Cal. 775. If a gift is made by the husband in contravention of the statute, the gift is not a nullity. On the contrary, the property vests in the donee, subject to a right on the part of the wife to have one-half of the gift revoked. If, after the gift is made, the wife gives her consent, the requirements of the statute are fulfilled, and no further action is required to make it a valid and effective gift. *Spreckels* v. *Spreckels,* 158 P. 537, 172 Cal. 775; *Dargie* v. *Patterson,* 169 P. 360, 176 Cal. 714; *McDougald* v. *First Federal Trust Co.,* 199 P. 11, 186 Cal. 243, 245. In short, a gift of community property by the husband during his lifetime without the consent of his wife is not void but *voidable.*

While the wife's interest in community property under the laws of California is more than an expectant estate, it does not ripen into a vested estate until her husband's death. *Talcott* v. *United States, supra; In re Brix Estate* (California), 186 Pac. 135. In *Paduveris* v. *Paris,* (California), 1 Pac. (2d) 986, 988, it is said:

> That the wife may relinquish to her husband her interest in the community property, which is thereby converted into the separate property of the husband, is too well settled to require discussion. See *Sanguinetti* v. *Sanguinetti,* 51 Cal. App. 347, 196 Pac. 799, and cases there cited; *Estate of Brix,* 181 Cal. 667, 186 Pac. 135.

Upon the death of the decedent " one-half of the community property belongs to the surviving spouse; the other half is subject to the

testamentary disposition of the decedent " (sec. 1401, Civil Code of California, 1927, Deering). By joining in the conveyance in September 1924, Mrs. Fish relinquished her right to receive one-half of the community property upon the death of Mr. Fish, thereby effectively converting the community property into the separate property of the husband (*Paduveris* v. *Paris, supra*), who *eo instanti* made gifts of the same property to Mrs. Fish and their children. By those gifts Mrs. Fish acquired an interest vesting *in praesenti*, instead of an interest vesting *in futuro* which she theretofore had. Her consent to the gifts was not the equivalent of a purchase of one-half of the property, but a relinquishment of her interest in the other half, from which petitioners argue that only the portion of the property given to the children is subject to the gift tax, as per their concession. If there was a purchase by Mrs. Fish, it was of property of the agreed value of $150,000 for a consideration of her future interest in that same property—in other words, by the transaction she received a present vested interest in lieu of an interest that would have vested upon the death of her husband. There being no evidence of the value, if any, of the consideration which she is alleged to have paid for the property received from Mr. Fish in September 1924, we can not determine what, if anything, was the consideration therefor. Furthermore, the decedent could have made a valid gift of community property to his wife without her consent. *Logan* v. *Thorne* (Cal.), 269 Pac. 626. In the circumstances, we hold that the decedent made gifts on September 23, 1924, of property of the agreed value of $300,000, and that such property is subject to the gift tax imposed by the Revenue Act of 1924, as amended by the Revenue Act of 1926.

In accordance with section 322 of the Revenue Act of 1924, the amount of the gift tax should be credited against the estate tax.

Reviewed by the Board.

*Judgments will be entered under Rule 50.*