[S. F. No. 8823. Department Two.—May 1, 1919.]

In the Matter of the Estate of ISAAC MINOR, Deceased.

[1] INHERITANCE TAX—TRANSFERS "IN CONTEMPLATION OF DEATH"—FINDING UNSUPPORTED BY FACTS.—On this appeal from a decree fixing an inheritance tax upon personal property, disposed of by a deceased person during his lifetime, the facts do not support the finding that the transfers in controversy were made in "contemplation of death" within the meaning of the inheritance tax law of 1905 (Stats. 1905, p. 341), whether the statute be considered and construed separately and solely in the light of its own language, or with the aid of the amendments thereto wherein the phrase, "in contemplation of death," is defined to mean that expectancy of death which actuates the mind of a person on the execu-

tion of his will, and not merely that expectancy of death which actuates the mind of a person in making a gift *causa mortis*.

[2] ID.—PROPERTY SUBJECT TO TAX—BURDEN OF PROOF.—The burden of showing that a transfer is subject to a collateral inheritance tax is upon the state.

APPEAL from a decree of the Superior Court of Humboldt County fixing an inheritance tax. Denver Sevier, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank McGowan and G. W. Hunter for Appellant.

Robert A. Waring, Inheritance Tax Attorney, and J. Paul Miller, Assistant Tax Attorney, for Respondent.

LENNON. J.—This is an appeal from a decree in probate fixing an inheritance tax upon personal property disposed of by the deceased during his lifetime.

The three contentions of the appellant are: (1) That the transfer in controversy was not made in contemplation of death; (2) that the transfer was not made in lieu of a testamentary disposition; and (3) that the transfer having been made pursuant to a marriage settlement did not fall within the purview of the then existing inheritance tax law.

The deceased, Isaac Minor, was married to appellant on the fifth day of August, 1908. He was then seventy-eight years of age. He was a rich man. His former wife had been dead for many years. He had a large family of sons and daughters, all of whom were married and most of whom had families. Appellant was a comparatively young woman, twenty-nine years of age, sensible and accomplished, and employed in the occupation of a practical nurse. Marriage was considered, discussed, and finally agreed upon by her and Isaac Minor. Thereupon an oral antenuptial agreement was entered into by and between them wherein and whereby the deceased, in consideration of her marriage to him, agreed to give, and appellant agreed to take, the sum of one hundred thousand dollars as a marriage settlement. At the time of making this agreement, Isaac Minor was actively engaged in attending to his business interests and was planning for the future. He was then and continued for many years there-

after in good health. He was active in the management of his affairs up to the time of his death in December of 1915.

The oral antenuptial agreement was partially performed by Isaac Minor on the day of his marriage to appellant, August 5, 1908, by the payment to her of the sum of fifty thousand dollars in cash. On February 16, 1912, over three years after the marriage, the execution and existence of the oral antenuptial agreement and its previous partial performance were evidenced by a written instrument wherein appellant acknowledged the prior payment of fifty thousand dollars in cash for and on account of the antenuptial agreement and also the transfer and indorsement to her by Isaac Minor, on the day of the execution of the said written instrument, in full and final performance of the oral antenuptial agreement, of a fully secured promissory note in the sum of fifty thousand dollars originally executed and made payable to Isaac Minor. This instrument contained a further clause wherein and whereby the appellant promised on behalf of herself, her heirs, etc., in consideration of the full performance of the antenuptial agreement to "release and forever discharge the said Isaac Minor, Sr., his heirs, executors, and administrators, of and from all manner of actions, causes of actions, suits, debts, dues, sums of money on account of any community interest which she has or may have by descent or inheritance in or to the estate of Isaac Minor, Sr., either in law or in equity. . . . " The whole of Isaac Minor's estate at the time of the marriage and at the time of his death was separate property and subject to his testamentary disposition. The one hundred thousand dollars paid to the appellant in pursuance of the antenuptial contract was at all times held and controlled by her as her separate property.

Early in 1915, Isaac Minor executed his last will and testament, in which he stated: "I give and bequeath to my wife Caroline Minor . . . personal property as follows . . . she having received before this time one hundred thousand ($100,000) dollars in money as her share of my estate."

Upon the foregoing facts, which are practically undisputed, the court below based its findings that the transfers to appellant by Isaac Minor, aggregating in cash and its equivalent one hundred thousand dollars, were made without an adequate and valuable consideration, in contemplation of death and in lieu of a testamentary disposition within the meaning of the

inheritance tax laws of the state in force and effect on the dates of the said transfers and on the date of the decedent's death. From these findings the conclusion of law was that the transfers in question were covered and controlled by, and therefore taxable under, the inheritance tax law. (Stats. 1905, p. 341.) That law prescribed the imposition of a tax upon the transfer of any property, real, personal, or mixed when the transfer is of property made by a resident, or by a nonresident when such nonresident's property is within this state, "by deed, grant, sale, or gift made in contemplation of the death of the grantor, vendor, or bargainor, or intended to take effect in possession or enjoyment after such death."

[1] The facts hereinbefore narrated do not support the finding of the trial court that the transfers in controversy were made in "contemplation of death" within the meaning of the statute just quoted. This is so whether the statute be considered and construed separately and solely in the light of its own language, or with the aid of the amendments thereto wherein the phrase, "in contemplation of death," is defined to mean that expectancy of death which actuates the mind of a person on the execution of his will, and not merely that expectancy of death which actuates the mind of a person in making a gift *causa mortis*. (See section 27 of the Inheritance Tax Act as amended in 1911, [Stats. 1911, p. 726].) That is to say; that when measured either by the commonly accepted or by the statutory definition of the phrase, "in contemplation of death," the transaction here involved cannot, upon the undisputed facts of the case, be fairly brought within and subjected to the provisions of the Inheritance Tax Act as it existed and was in force and effect when the transaction was initiated and finally consummated.

[2] The burden of showing that a transfer is subject to a collateral inheritance tax is upon the state. (*In re Wadsworth's Estate,* 100 Misc. Rep. 439, [166 N. Y. Supp. 716].) Fairly construed, the evidence adduced upon the whole case falls far short of showing that at the time of the making of the oral antenuptial agreement the death of Isaac Minor was presently or even remotely contemplated by either party to the agreement. The state attempted to support the burden of making a case by proof of the oral antenuptial agreement and of the circumstances preceding, attending, and following the making of the agreement. But the agreement itself does

not disclose, nor do any or all of the circumstances taken singly or collectively indicate, that the transfers in question were made in contemplation of death and in lieu of a testamentary disposition. Manifestly the marriage of Isaac Minor to the appellant was not a death-bed marriage. At the time he made the agreement to marry, on the day of the marriage, and for several years thereafter, Isaac Minor was not only in good health but, despite his years, was physically and mentally active in the successful management of his extensive business interests. The transaction at its inception and up to the time of the partial performance of the antenuptial agreement on the day of the marriage certainly contains no suggestion that Isaac Minor was then contemplating anything but matrimony. In view of his then admitted good health and physical and mental activity, it would indeed be, to say the least, incongruous that he should have contemplated death and matrimony at the same time. It may, perhaps, be said that Isaac Minor was contemplating death when, some three and a half years after his marriage and the partial performance of the antenuptial agreement, he saw fit, when making the final payment under the contract, to insist not only upon an acknowledgment in writing of the full performance of the contract, but also upon a release of his estate from any and all claims which appellant otherwise might have had thereto. Certain it is that Isaac Minor was contemplating death when he made his will. But it must be remembered that both of these instruments were executed several years after the making and the partial performance of the antenuptial contract. Clearly, therefore, these instruments cannot be held to be an integral part of the antenuptial agreement or anything more than an acknowledgment and affirmance of that agreement. Granting that at the time of the execution of the instruments Isaac Minor was contemplating death, this fact alone is not sufficient in and of itself to show that he was contemplating death when he entered into the antenuptial agreement.

It nowhere affirmatively appears that the oral antenuptial agreement involved the relinquishment of any right which appellant might have had in the estate of Isaac Minor as a result of her marriage to him. Consequently, if Isaac Minor had died between 1908 and 1912, appellant, in the absence of any other agreement to the contrary, might have claimed the sum of fifty thousand dollars from his estate upon the

theory that it was due to her pursuant to the terms of the antenuptial agreement, and, obviously, if such a claim had been allowed and paid in satisfaction of a contract supported by the perfectly valid and valuable consideration of marriage, it could not have been subjected to a collateral inheritance tax. But even if it could be said that the evidence clearly and affirmatively reveals the fact that the oral antenuptial agreement was made and based in part upon the consideration of the appellant's relinquishment of all right in the estate of Isaac Minor, nevertheless, the evidence upon the whole indicates clearly enough, we think, and practically without conflict, that the marriage was the primary and controlling consideration for the making and ultimate consummation of that agreement.

Confirmatory of these conclusions is the added fact that the transfers in controversy took effect in full and unqualified possession and enjoyment during the lifetime of Isaac Minor, that admittedly being the intent and purpose of the antenuptial agreement. It is to be noted that when making an antenuptial agreement the parties doubtless may and often do consider the fact that certain property rights result by law from the assumption of the marriage relation. Especially is this so with respect to those rights which take effect upon the decease of one of the spouses. In such a case, the parties desiring a definite and final arrangement of property rights enter into an agreement settling and determining those rights. Obviously, the purpose of such a contract is to effect a disposition of the property as an end in and for itself. It is not made as a condition precedent to obtaining some other and independent benefit. When such a settlement assumes to fix the rights of one spouse in the estate of the other upon his or her death, or in effect to pass property *in praesenti* in lieu of testamentary or intestate disposition, the transfers involved therein can fairly be said to have been made in contemplation of death. It was this kind of antenuptial contract which was interpreted and the transfer thereunder held subject to tax in *People* v. *Estate of Field*, 248 Ill. 147, [33 L. R. A. (N. S.) 230, 93 N. E. 721], and in *People* v. *Union Trust Co.*, 255 Ill. 168, [Ann. Cas. 1913D, 514, L. R. A. 1915D, 450, 99 N. E. 377]. But such, however, is not the situation where, as here, the parties primarily contemplate matrimony and a marriage settlement as a condition precedent

thereto. Here the controlling consideration of the transfer was the marriage, a circumstance which necessarily excludes the idea that a desire to make a testamentary disposition was in any substantial sense a direct cause of the transfer. That such is the case may be demonstrated by a brief recapitulation of the facts. In 1908 Isaac Minor was seventy-eight years of age. He was a wealthy man. His wife had been dead many years. His children had grown up, married, and had absorbing interests of their own. Appellant was a comparatively young woman of twenty-nine, a nurse by profession. She knew that she was making some sacrifices. Isaac Minor knew that he was getting a sensible and accomplished young woman to be his wife, to attend to his domestic affairs, and to care for him in his declining years. It may be admitted, as asserted, that the marriage would not have taken place had Isaac Minor been a poor man. That fact, however, would do nothing more than tend to show that appellant rightfully demanded some benefit to balance the sacrifice which youth was making to old age. Although Isaac Minor was a wealthy man, all of his property was and would continue to be his separate property subject to his absolute power of disposition. He would no doubt be pressed by the claims of a large family. In these circumstances, it was only fair and proper that appellant should have been provided for by a sufficient marriage settlement.

Concluding as we do that neither the antenuptial agreement itself nor the shown and undisputed circumstances preceding, attending, and following its making indicate that the transfers in question were induced substantially or at all by any·thought of death by either party to the agreement, we are constrained to hold that those transfers were not made in contemplation of death and in lieu of a testamentary disposition within the meaning of the inheritance tax law.

The decree appealed from is reversed.

Melvin, J., and Wilbur, J., concurred.