[Civ. No. 3034.    Fourth Dist.    May 15, 1942.]

Estate of DAVID LAVINE NEWMAN, Deceased. NEVA H. NEWMAN, Individually and as Executrix, etc., Appellant, v. HARRY B. RILEY, as State Controller, etc., Respondent.

Joseph C. Kimble, Howard B. Thomas, William N. Snell, Oliver M. Jamison and Kimble & Thomas for Appellant.

James W. Hickey and Alvin P. Jacobs for Respondent.

BARNARD, P. J.—This is an appeal from an order fixing inheritance taxes under the Inheritance Tax Act of 1935, as amended. (Stats. 1935, p. 1266, as amended, Deering's Gen. Laws, 1937, Act 8495.) The controversy is as to whether three transfers of property made by the decedent to his wife were transfers in contemplation of death within the meaning of the statute.

Mr. Newman and the appellant were married in 1924, he being 53 years of age and she 37. He was then engaged in business and she owned a gift shop which she continued to

operate after the marriage, with encouragement and some assistance from him. In 1925, feeling that he had sufficient means and desiring to travel, he retired from business. Between that time and 1936, he made three trips around the world and numerous trips within this country. In 1930, he became a partner in the Penny-Newman Grain Company. From 1932, until April 25, 1939, when he died as a result of a heart attack suffered the previous day, he took an active part in this business and was in the habit of working long hours each day. The business was successful and his income therefrom averaged between $6,000 and $7,000 a year.

In the meantime and about February, 1934, the depression forced the appellant to discontinue her gift shop business. In July, 1934, Mr. Newman conveyed his home, appraised at $13,500, to the appellant. In August, 1935, he conveyed to her all of his remaining real estate, consisting of rental properties appraised at $23,000. In May, 1936, he transferred to her certain securities appraised at $21,097. These three transfers, totaling $57,597, constituted about 73 per cent of the value of all of his property and the only property he retained was his interest in the Penny-Newman Grain Company, which interest was appraised at $21,417. At some time prior to the making of the first of these transfers, the exact date not being disclosed, the deceased had made a will leaving all of his property to the appellant with the exception of small bequests to two nieces and two nephews. In June, 1936, and about a month after the last transfer in question, he made a new will eliminating the bequests to the nieces and nephews and leaving everything to the appellant. This will was made shortly before his last trip to Europe.

It is conceded that Mr. Newman was a generous man, that he had a cheerful disposition, and that about a week before his fatal heart attack he and his wife made a trip to Southern California and selected a lot on which they planned to build their future residence. It is admitted that at the time of the transfers he was in good health for a man of his years, that he worked long hours, and that he enjoyed rather strenuous automobile trips during vacations and at week ends. The appellant testified that her husband had expressed a desire to have her continue in some business which would enable her to use her artistic talents and her knowledge of interior decoration but which would not be so confining as the retail business; that he had felt that if each of them were

established with separate financial competencies any business reverses suffered by one would not affect the other and that this could best be accomplished by segregating his business and non-business properties; that he suggested that she take over the ownership and management of the home and any rental property; that in July, 1934, he transferred the home to her and she became actively engaged in the management of the real properties; that about a year later, he transferred the remainder of his real property to her; that she collected the rents and arranged for any improvements, and later purchased some lots and built two homes for sale; that the improvements on the rental properties came from the rentals as ''I continued to do as Mr. Newman had done in the past''; that in May, 1936, her husband transferred his securities to her so that she could finance the building of new homes; and that she sold some of the stocks and used the proceeds for the purpose of financing a third house which she built.

The inheritance tax appraiser filed a report in which he found that these three transfers were all made in contemplation of death within the purview of section 2, subdivisions (3), (a) and (4) of the Inheritance Tax Act. The appellant filed objections to this portion of the report. After a hearing, the court found that the decedent had made these transfers without valuable or adequate consideration and in contemplation of his death, and entered an order overruling the appellant's objections and fixing the inheritance tax on these transfers, including the property covered by the will, at $1,612.37. This appeal followed.

The appellant contends that the evidence is not sufficient to support the court's finding to the effect that these transfers were made in contemplation of death. The questions involved have been ably and exhaustively briefed on both sides. While the parties agree that the determining factor in such a case is the motive which actuates the transferor in making the gift they disagree somewhat as to the proper test that should be applied. The appellant argues that the test lies in the dominant and impelling motive of the transferor and that where that motive is associated with his continued life, rather than with his death, the transfer is not in contemplation of death. It is then argued that it must be here held that the evidence is not sufficient to support the essential finding since it here appears that the deceased was in good health for a man of his years, that he was active in business and on

pleasure trips, that he was making definite plans for the future, that there is direct evidence that two motives in making the transfers were to see the appellant reestablished in a business wherein she might use her artistic talents and to establish her with an independent financial competency which would be a protection to both of them, and that there is no direct testimony of any other motives on the part of the deceased which might be construed as being associated with his death.

The respondent argues that in order to make such a transfer taxable under the statute contemplation of death need not be the sole or even the dominant motive provided it is one of the impelling motives; that such a transfer is taxable if contemplation of death was a motive without which the transfer probably would not have been made, even though other motives existed; and that under the rule established in this state such transfers are taxable if they are "gifts in lieu of testamentary disposition or transfers made by a person because of the general expectancy of death which actuates the mind of a person on the execution of his will."

▪ It rather clearly appears from the wording of our statute (subd. (4), § 2, Inheritance Tax Act) that the words "contemplation of death" refer to that expectancy of death which actuates the mind of a person in the execution of his will rather than to that general expectation of death which all men have. It is well settled in this state, however, that the phrase in question is not limited to an expectation that death is imminent or that it is likely to occur within a few years. The controlling rules and principles have been sufficiently established in this state and it is unnecessary to consider or analyze the varying viewpoints in the many decisions which have been cited from other states and from federal courts. It may also be observed that in several particulars views expressed in some of the earlier decisions in this state have been somewhat modified or changed, in effect, by later decisions.

In *Estate of Reynolds,* 169 Cal. 600 [147 Pac. 268], where an elderly man, who must have known that he had not long to live, made large gifts to his wife and to his son, an order taxing the gifts was affirmed. The court there said: "Nothing in our law compels us to adopt the restricted construction put by the courts of New York upon their own statute and everything in our law directs that a liberal construction

should be placed upon it to the end that its provisions be not evaded." In *Spreckels* v. *State,* 30 Cal. App. 363 [158 Pac. 549], an elderly woman who suffered from heart trouble but did not expect immediate death, transferred large properties to her children, there being evidence that she had said that her income from other sources was larger than she needed and that she desired to distribute a part of her belongings to her children so that they might use and enjoy the same during her lifetime. A finding that the transfers were not made in contemplation of death was affirmed, the court there saying: "A reasonable and just view of the law in question is that it is only where the transfer of property by gift is immediately and directly prompted by the expectation of death, that the property so transferred becomes amenable to the burden" and that " 'It is only when contemplation of death is the motive without which the conveyance would not be made, that a transfer may be subjected to the tax.' That is, the expectation of death must be the direct, specific and immediate animating cause of the transfer." The court stated that the evidence justified the inference that there was no thought of immediate death in the donor's mind and that the direct and impelling motive for the transfers was not that of the contemplation of her death. And, after pointing out that the evidence would also have justified a contrary conclusion, the court said, "each case arising under the statute in question . . . must rest upon its own peculiar facts, and the adjudicated cases can, as a rule, do little, if any, more than to illustrate the application of the law to the particular facts of particular cases." In *McDougald* v. *Wulzen,* 34 Cal. App. 21 [166 Pac. 1033], an order refusing to tax a transfer was affirmed. The grantor was 83 years old and in reasonably good health. There was evidence that he transferred the property to his wife because it annoyed him to take care of it. The court held the evidence sufficient to sustain the findings although contrary findings, if made, would have had to be sustained. In *Estate of Minor,* 180 Cal. 291 [180 Pac. 813, 4 A. L. R. 456], an order fixing a tax was reversed since the asserted gift was made pursuant to an antenuptial agreement and the court held that marriage was the primary and controlling consideration which necessarily excluded any idea that a desire to make a testamentary disposition was any substantial cause of the transfer.

In *Estate of Pauson,* 186 Cal. 358 [199 Pac. 331], an order fixing a tax was affirmed. The donor, who was 78 years old and in vigorous health, transferred some $600,000 to a corporation practically all of the stock of which he gave to his children. He was voted a salary of $20,000 a year to cover his expenses and died in less than a year from a sudden illness. The court stated that the question of whether or not a gift is made in contemplation of death is a question of fact and that if the evidence justifies an inference that the transfer was or was not made in contemplation of death the finding cannot be disturbed on appeal even though the appellate court might draw a contrary inference from the same evidence. In discussing the provisions of the 1911 act, which are now found in subdivision (4) of section 2 of the Inheritance Tax Act, the court said that it saw no particular difficulty in interpreting these provisions in the light of the express purpose of the Legislature ''to tax any and all transfers which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws,'' and in the light of the litigation pending when the definition was placed in the statute. The court then said:

''In other words, the taxing of transfers was purely ancillary to and in aid of taxes imposed upon the right of succession, the purpose of such ancillary legislation being to tax transfers which were made in lieu of succession or testamentary disposition. That the object of such imposition of taxes upon transfers made in contemplation of death is to prevent the evasion of laws imposing a tax upon the right to succeed to an estate at death is conceded in all the cases. It is obvious that this purpose is not achieved when the phrase 'transfers made in contemplation of death' is limited, as in New York, to gifts *causa mortis.* This court, in the *Estate of Reynolds, supra,* declined to follow this narrow view. It is equally obvious that the legislative intent will be frustrated if the transfer in order to be taxable must be made with a sense of impending death, for under this view no tax can be collected where a donor in expectation of death and for the purpose of vesting title in his heirs makes a transfer *inter vivos* with no contemplation of death other than that involved in arranging his affairs so that when the contemplated event occurs the property will be distributed or vested in accordance with his wishes in that event. . . .

"It is equally clear that our legislature of 1911 intended to define the phrase 'in contemplation of death' so as to cover, among other things, all dispositions of property 'without valuable and adequate consideration,' substantially testamentary in character (see § 27, *supra,* Stats. 1911, c. 395, p. 726), or, to use the language of the statute, to tax 'all transfers which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws.' The statutory definition of the phrase, contemplation of death, includes, first, 'that expectancy of death which actuates the mind of a person upon the execution of a will,' and, second, is in nowise to 'be limited and restricted to that expectancy of death which actuates the mind of a person in making a gift *causa mortis,*' and, third, 'it is hereby declared to be the intent and purpose of this act to tax any and all transfers [and this includes transfers in contemplation of death] which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws.' The phrase 'all transfers' in this clause certainly includes transfers made 'in contemplation of death.' It is clear from a consideration of this definition that it was thereby intended to cover transfers made by a donor in lieu of a transfer by will. . . .

"If the donor in that frame of mind decides that he will make a gift in lieu and instead of making a will and to accomplish substantially the same purpose he would accomplish by a will, such a transfer clearly comes within the scope of the statute in question."

The court then pointed out that there was nothing in *Estate of Minor, supra,* which was inconsistent with this view and then distinguished *Spreckels* v. *State, supra,* and *McDougald* v. *Wulzen, supra,* also saying that in the last two cases it was conceded that judgment would have been affirmed had a contrary conclusion been reached by the trial court.

In *Estate of Snyder,* 71 Cal. App. 324 [235 Pac. 54], an order fixing a tax upon a building transferred by a mother to her son was affirmed. The son contended that the impelling motive for the transfer was his mother's desire to have him manage her affairs in accordance with a contract between them, and not her contemplation of death. The court there said:

"But it is not necessary that the decedent should have made a direct statement of her motives. If the circumstances shown

are such as in the mind of a reasonable man might justify the inference that in coming to an agreement with her son, as well as in making said deed, she was actuated by the contemplation of death, that will be sufficient to sustain the court's finding to that effect.''

After observing that ''If it sufficiently appears that interests having relation to the ordinary affairs of life, rather than death, constituted the primary and controlling consideration for the making and ultimate consummation of an agreement to transfer property, the transfer will not be subject to tax,'' the court then held that the evidence in that case justified the inference that the probability of the mother's death in the near future ''was an important moving cause'' of the transfer.

In *Chambers* v. *Larronde,* 196 Cal. 100 [235 Pac. 1024, 41 A. L. R. 980], an order fixing a tax on a large amount of property transferred by a woman 84 years old to her children was affirmed. It was held that the phrase ''in contemplation of death'' as used in the 1911 statutes imports ''a transfer of property, the transferor having in mind the general expectancy of death which ordinarily actuates one in the execution of his will'' and that these words are sufficiently broad ''to cover any and all transfers of property . . . from one person to another in anticipation of death or in lieu of testamentary disposition.'' The court also said that the fact that there had been no discussion or mention of death in connection with making the transfers ''would not necessarily be opposed to a conclusion that decedent acted under an undisclosed intent. . . .''

In *Estate of Boole,* 98 Cal. App. 714 [277 Pac. 759], an order fixing a tax was affirmed. The donor died at the age of 63 and five years after making the transfer in question. While his health had been seriously impaired over a period of five years there was evidence that he had no fear or expectation of immediate death. After stating that the latter fact did not negative the existence of that contemplation of death which is defined in the statute, the court said:

''The state's burden of proof is to show the motive or motives of the decedent which actuated the transfers. From the very nature of this burden, a case capable of direct proof of the issue will seldom arise. The motive will usually have to be inferred from other facts such as the acts of the decedent, the surrounding circumstances and the nature of the

transfer. For these reasons the question is one which is peculiarly within the province of the trial court.''

■ The question whether or not a gift is one made in contemplation of death is essentially a question as to whether such gift was one in the nature of a distribution of the donor's property or was one which was intended merely as a lifetime favor to the donee. While the solution may depend upon an impelling and inducing motive or motives it does not always depend upon any single motive which controls to the exclusion of all others. ■ Where a contemplation of death is one of the motives, an important moving cause of the transfer, and one without which the transfer would not be made, the transfer is taxable even though other substantial motives may have contributed to the result. If one purpose of the transfer is a distribution of the donor's property as a substitute for testamentary or similar disposition, with the effect of merely hastening or anticipating the effects of what would otherwise be a testamentary or similar disposition, the transfer is taxable. ■ A desire to see a donee have a present use of the property and to have the donee established with a separate competency are not necessarily inconsistent with a transfer of the property in contemplation of death within the meaning of the statute. Such desires and motives may well accompany an intention to make an advanced delivery to a donee of property which the donor intends shall ultimately go to him, that is to say, an intention to make a present distribution of property in lieu of a testamentary or similar distribution. ■ Where the exclusive motive for the transfer is one associated with the continued life of the donor rather than with his death the transfer is not taxable under this statute. But where such a motive, although present, is not exclusive the transfer may be taxable.

■ In view of the principles above set forth it must be held that the evidence here is sufficient to sustain the finding that all of these transfers were made by the decedent in contemplation of death, within the meaning of the statute. The evidence relied upon by the appellant is not sufficient to compel a finding contrary to that made by the court. The existence of the motives thus indicated and relied upon by the appellant does not establish, as a matter of law, the absence of the other motive, ''contemplation of death,'' which is essential here. And there is other evidence which justifies an

inference that a contemplation of death at some time in the future was an important moving cause of each of these transfers. The decedent transferred to the appellant over $57,000 worth of property, constituting about 73 per cent of all he had. As the court said in *In re Schweinler's Estate*, 117 N. J. Eq. 67 [175 Atl. 71]:

"As a matter of common knowledge, most men do not divest themselves of their whole estates or a large proportion thereof except as the result of that contemplation of death already discussed. When such a gift is made, therefore, it is more probable than not that it was made as the result of such contemplation."

The transfer included all of the property owned by the decedent except his interest in the partnership through which he was engaged in business, which was valued at about $21,000. The transfers were made to his wife, who was 16 years younger than he was. She was not only the natural object of his bounty but she was given the bulk of his estate in his first will and all of it in the second will. The first of these wills was executed before any of the transfers were made and the other within a month after the last transfer. The fact that the deceased devised and bequeathed practically all of his property to the appellant, then transferred about three-fourths of it to her outright and then, within a month, made a new will giving her all of his estate, is significant and indicates that throughout all of these transactions he had in mind that expectancy of death at sometime in the future which actuates the mind of a person in the execution of his will, and that one of his motives in making the transfer was to make in advance a partial distribution of his property without waiting for the time when his will should take effect. The question was one of fact for the trial court and, assuming that a contrary finding would have been supported by the evidence, it cannot be held as a matter of law that the evidence and the reasonable inferences that may be drawn therefrom are not sufficient to support the finding made.

The respondent relies upon subdivision 2 of section 16 of the Inheritance Tax Act, which provides that on the hearing of objections to the report of the appraiser "the report of the inheritance tax appraiser shall be presumed to be correct and it shall be the duty of the objector or objectors to proceed in support of said objection or objections." It is argued that this statutory provision placed the burden of proof upon the

appellant, rather than the respondent, and that since the inheritance tax appraiser here included in his report a finding that these transfers were made in contemplation of death the statute creates a presumption to this effect, which presumption is additional evidence which supports the finding made. This contention is vigorously attacked by the appellant. It is unnecessary to consider the question of the existence or of the effect of such a presumption under our view that the finding is sufficiently supported by the evidence whether or not any such presumption exists.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 13, 1942.