[Civ. No. 12733. Third Dist. May 26, 1971.]

Estate of HERBERT M. KUPSER, Deceased.
HOUSTON I. FLOURNOY, as State Controller,
Petitioner and Appellant, v.
FRANK KUPSER et al., Objectors and Respondents.

### COUNSEL

Myron Siedorf, Robert G. Harvey and Ralph W. Amerson for Petitioner and Appellant.

Rich, Fuidge, Dawson, Marsh, Morris, Sanbrook & Noonan, Charles C. Dawson, Jr., Steel & Arostegui, Robert W. Steel, Powell, Offutt & Coolidge for Objectors and Respondents.

### OPINION

**REGAN, J.**—In this proceeding, the appeal by the Controller of the State of California seeks to reverse in part the order fixing inheritance tax in the estate of Herbert M. Kupser, deceased, being Yuba County probate No. 6959, as well as the order relating to the inheritance tax liability of certain transfers of property in the estate of Anna M. Kupser, being Yuba County probate No. 4253, which dismissed the petition to determine inheritance tax filed by the Controller in an action entitled Houston I. Flournoy v. Frank Kupser, designated as Yuba County action No. 20016.

## FACTS

Decedent, Herbert M. Kupser, died January 12, 1965, from congestive heart failure. The onset of his death was totally unexpected and unpredictable. Dr. Philip E. Thunen, a physician in Marysville who had been decedent's doctor for many years, had been asked by decedent to be and subsequently became the executor of his estate. He visited decedent at his home approximately two to four times during the year of 1964. During that year he was treating decedent for osteoarthritis of his knee and other problems. Thunen's appraisal of decedent was that he was in vigorous health. He supervised operations taking place on his property (such as land leveling) and sought out medical care for his arthritis only because it became difficult for him to get around. Decedent was hospitalized three times within a few months prior to his death. Each time he was hospitalized a little more than a week.

Decedent never had any discussions with Thunen as to his expectation of his death or settling his property. Although he had suffered a 15-year heart condition, his death was abrupt and as mentioned herein unexpected; he was brought in unconscious and died after one and one-half days in the hospital. Decedent required no treatment for this condition which resulted in his death.

Prior to his death decedent made certain transfers material to this appeal:

1. To Mrs. Mary Souza, a stranger in blood, cash in the amount of $3,000; 2. To Vada Gould, a stranger in blood, cash in the amount of $3,000; 3. To Vada Gould, a stranger in blood, a Buick automobile; the value of the automobile at date of his death was $4,267.56; 4. To Mrs. W. T. Johns, a cousin, cash in the amount of $3,000; 5. February 17, 1959, decedent conveyed by deed 261.65 acres of farm land to James E. Kupser, a nephew, the value at date of death being $84,500.

*Were the Gifts to Vada Gould, Mrs. W. T. Johns, and Mary Souza Taxable as Made by Decedent in Contemplation of Death?*

Decedent explained to Dr. Thunen why he gave money to Mrs. Johns. She had written him requesting money because her son was very ill and considerable expense was involved in his treatment. Wesley Chipman, decedent's accountant, advised decedent that since he had already exceeded his lifetime exemption, he could only send Mrs. Johns the sum of $3,000 without tax consequences. Mrs. Johns was decedent's first cousin and he had raised her.

Vada Gould and her husband had lived with decedent for many years

prior to his death. She was present when he wrote the check to Mrs. Johns. Mrs. Gould testified that the money was really intended for Mrs. Johns' son but the check was payable to Mrs. Johns because of the son's blindness and state of health.

Decedent and his former housekeeper, Mary Delfrati, lived with the Goulds, who had all of the expenses of the house, his care and Mary's care. Decedent was having a hard time getting around because of the arthritis in his legs and knee. He did not have the use of one arm so the Goulds gave him physiotherapy treatments which enabled him to regain the use of his arms.

Decedent was unable to drive a car, so Vada Gould did all of his driving for him. She owned a Chevrolet which was very low and uncomfortable for decedent to get in and out of. The car was not air-conditioned and decedent became ill from the heat in the summer months. A Buick salesman came out to the house, and decedent ordered the new Buick which the Controller's office questions herein. He bought the car because he said it was more comfortable, he wanted air-conditioning, and he wanted Vada to have a comfortable car since he had to ride with her.

The $3,000 cash gift which the Controller's office also questions was given to Vada approximately a year prior to decedent's death. Vada asked decedent to go into the hospital for a couple of weeks so that she could have a vacation and a respite from his care. He went into the hospital for two to three days; refused to stay and returned to the Gould residence. Since she had to forego her vacation, decedent gave her the $3,000 gift.

In 1959, decedent transferred the Kupser home ranch to his nephew, James. An appraisal was made of the property by two real estate agents who concluded the total value of the property was $108,510. In conjunction with the transfer of the property, decedent and his nephew entered into an agreement wherein the nephew promised to furnish to decedent and his housekeeper, Mary Delfrati, a comfortable home with all the necessities of life at the nephew's sole expense. The nephew spent approximately $6,000 rebuilding a home on the ranch to make it liveable for his uncle. Decedent's accountant deducted the value of the support agreement for Mary and decedent from the value of the property transferred and paid a gift tax on the balance of $6,841.41. One of decedent's main concerns was that Mary Delfrati be taken care of.

No evidence exists in this record from which we can determine the circumstances or purposes of decedent's *inter vivos* transfer of $3,000 to Mary Souza. The appraiser found tax to be due on this transfer; he stated that he had no information of the purpose of this transfer, and it can be inferred

from the record that the appraiser did not know the circumstances of the transfer. The appraiser's decision that tax was due on this transfer was made on the basis of the report submitted to him by the Controller's office.

Section 13642 of the Revenue and Taxation Code reads, in pertinent part, as follows: "A transfer . . . made in contemplation of the death of the transferor is a transfer subject to this part, but no such transfer shall be deemed or held to have been made in contemplation of death if made more than three years prior to the death of the transferor.

" 'Contemplation of death' includes that expectancy of death which actuates the mind of a person on the execution of his will. The term is not restricted to that expectancy of death which actuates the mind of a person making a gift causa mortis."

■ It is well established that the burden of showing that a transfer is made in contemplation of death is on the state. (*Estate of Adams* (1952) 39 Cal.2d 309, 318 [246 P.2d 625]; *Estate of Minor* (1919) 180 Cal. 291, 294 [180 P. 813, 4 A.L.R. 456]; *Estate of Snyder* (1925) 71 Cal.App. 324, 328 [235 P. 54].) And whether or not a transfer is made in contemplation of death is a fact question. (*Spreckels* v. *State of California* (1916) 30 Cal.App. 363, 368 [158 P. 549].) ■ The appellate court will uphold the findings of the lower court if there is any substantial evidence which supports such findings; the appellate court is entitled to consider the testimony given at the trial and all inferences which may reasonably be drawn from such facts. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427 [45 P.2d 183]; *Spreckels* v. *State of California, supra,* 30 Cal.App. at p. 380.)

■ "The mere fact that a person is much advanced in years or not in good health is not alone sufficient to prove that a transfer made by him of his property was made in contemplation of death. If it sufficiently appears that interests having relation to the ordinary affairs of life, rather than death, constituted the primary and controlling consideration for the making and ultimate consummation of an agreement to transfer property, the transfer will not be subject to tax." (*Estate of Snyder, supra,* 71 Cal.App. at p. 329.)

The Supreme Court in the *Estate of Adams, supra,* 39 Cal.2d 309, 318, stated that the motive of a transfer will usually have to be "inferred" from other facts such as the acts of the decedent, the surrounding circumstances and the nature of the transfer. The criterion whether or not a gift is made in contemplation of death is a question of whether the gift is likened to the distribution of a donor's property, or a lifetime benefit to the donee. When the donor's contemplation of death is an important cause of the transfer

without which it would not have been made, the gift is taxable although other motives may have contributed to the result. ■ A desire to give a donee present use of the property is not necessarily inconsistent with a transfer in contemplation of death. (See also *Estate of Boole* (1929) 98 Cal.App. 714, 718-719 [277 P. 759].)

■ The evidence bearing on each of the transactions was discussed above. Briefly summarized, inferences can be drawn that decedent gave the car to Vada Gould for his own comfort, and he gave her the $3,000 in order to avoid a hospital stay. Mrs. Johns received the $3,000 after her request; the money was given her to defray the medical expenses of her son. There is no evidence from which we can determine the purpose or circumstances of the transfer to Mary Souza. Contrary to the Controller's suggestion, the appraiser had no knowledge of the circumstances or purpose of this transaction and he adopted the statement in the inheritance tax report sent to him.

The court found that the transfers to each of the three individuals were not made in contemplation of death. As to the gifts to Vada Gould and Mrs. Johns, these findings were based on evidence essentially undisputed. The finding with reference to the gift to Mary Souza appears to be based on the failure of the Controller's office to carry its burden of proof.[1] It was the obligation of the state to prove its case. (*Estate of Adams, supra,* 39 Cal.2d at p. 321.)

### Is the Entire Corpus of $50,000 Taxable to the Life Tenant, Mary Delfrati?

■ The will of decedent Herbert M. Kupser provides, in part:

"THIRD: I give to my Trustees, hereinafter named, the sum of Fifty Thousand Dollars ($50,000.00) in cash or securities or partly in each, as my Executor shall choose at the time for final distribution of my estate, IN TRUST on the following terms and conditions:

"(a) My trustees shall apply as much, first, of the net income and, if necessary, of the principal of this trust as shall be necessary to care completely for my former housekeeper, MARY DELFRATI, for as long as she lives. By a prior agreement, the Rideout Hospital Foundation is already obligated to provide certain hospital attention for her, and therefore this trust will not be obligated to do so.

---

[1]We differentiate the state's burden of proof from Revenue and Taxation Code section 14512, which sets forth the duty of an objector to proceed in support of an objection to the appraiser's report: "For the purpose of the hearing the report of the inheritance tax appraiser is presumed to be correct, and at the hearing it is the duty of the objector to proceed in support of his objection."

"(b) Upon the death of Mary Delfrati, this trust shall terminate, and the balance of any principal remaining, plus any accumulated or undistributed income, shall be distributed to the RIDEOUT HOSPITAL FOUNDATION.

"If Mary Delfrati does not survive me, this this [*sic*] gift shall lapse and shall pass with the residue of my estate."

Both petitioner and respondents concede Rideout Hospital Foundation is a charitable remainderman.

The trial court in its opinion and order states:

"The Court cannot accept the Controller's proposition that the entire trust of $50,000.00 set up for Mary Delfrati should be taxable to her. We note that elsewhere $1800.00 per year was a figure accepted by the Controller as adequate for furnishing all necessaries for her care. In addition, it also appears that decedent in a gift to the Rideout Hospital made provision for the medical care of Mary Delfrati, and at her age, expenses for medical care is the most likely item to necessitate invasion of the principal.

"The Controller is directed to calculate the tax on the basis of Mary Delfrati having a life estate in the sum of $50,000.00 so far as the gift or trust is concerned."

Petitioner contends the court, in taxing to Mary Delfrati the sum of $7,939.07 as the value of the interest to which she is entitled under decedent's will, rather than the sum of $50,000 which is the sum held in trust to which she is entitled if necessary to care completely for her, is in error. He argues that pursuant to the mandate of section 13411 of the Revenue and Taxation Code, the entire trust sum must be taxed to her. This section provides: "(a) In the case of a transfer made subject to a contingency or condition upon the occurrence of which the right, interest, or estate of the transferee may, in whole or in part, be created, defeated, extended, or abridged, the tax is computed as though the contingency or condition has occurred in such manner as to produce the highest rate of tax possible.

"(b) Upon the occurrence of the contingency or condition after an order fixing inheritance tax has been entered in which the tax was computed at the highest rate possible pursuant to this section, the court which made the order shall, upon petition after notice to the Controller, modify said order to fix the tax due in accordance with the occurrence of the contingency or condition. The petition shall be filed within six months after the occurrence of the contingency or condition."

We hold, for reasons which shall hereinafter appear, that the full amount

of the trust fund held for Mary Delfrati is taxable as of the date of transfer, that is, the date of death of the testator, Herbert M. Kupser.

A transfer under section 13411 is defined in section 13304 of the Revenue and Taxation Code, which reads as follows: " 'Transfer' includes the passage of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise."

An inheritance tax is imposed upon every transfer subject to the Inheritance Tax Law (Rev. & Tax. Code, § 13401) and a transfer by will is subject thereto. (Rev. & Tax. Code, § 13601.)

The transfer of the sum of $50,000 to the trustees who are to apply its income for the care of Mary Delfrati is subject to a contingency upon the occurrence of which the life estate of Mary Delfrati is extended in that an invasion of the corpus in any amount necessary for her complete care may occur at anytime during her life. As a consequence, the tax is to be computed as though the contingency has occurred and in such manner as to produce the highest rate of tax possible. The contingency allows an invasion of the full amount of the trust fund and the tax is to be computed on this amount and paid from the corpus of the trust fund. (*Estate of Strong* (1937) 10 Cal.2d 389 [74 P.2d 231];[2] Rev. & Tax. Code, § 14124.)

Thus the state is assured that the tax on the amount over and above the income which is or may be expended on behalf of Mary Delfrati will be paid.

*The Controller's Contention That the Petition in Yuba County Action No. 20016 Was Improperly Dismissed Because Anna Kupser's Gift to Decedent Was Subject to Inheritance Tax.*

The Controller filed his petition in action No. 20016 on October 7, 1968, wherein he sought to reopen the question of tax liability for transfers which took place in the Anna Kupser estate. The petition alleged that Anna Kupser died February 6, 1944, and that certain transfers between Anna and her sons and between the sons after Anna's death had tax consequences which had not yet been ascertained.

Shortly after Anna Kupser's death, her executor, the Bank of America,

---

[2]Subdivision (b) of section 13411 makes provision for a modification of the amount of the inheritance tax upon the happening of the contingency, and section 14171 makes provision for the trustee to elect to defer the payment of the tax until the contingency occurs by the execution of a bond to the state in the manner and as set forth in section 14172 et seq.

filed action No. 9605 alleging that Herbert Kupser (the decedent herein) had practiced undue influence and fraud on his mother. After hearing evidence, the trial court determined that the conveyance by Anna Kupser to Herbert Kupser dated August 25, 1922, should not be set aside and defendant's title to the property conveyed therein was quieted.

Action No. 9605 was repeatedly mentioned in the file of the Anna Kupser estate. The petition for partial distribution recited that several parcels of real property were acquired by the executor under the settlement in action No. 9605, and that action No. 9605 was still pending as to the Kupser ranch, which property was conveyed under the August 25, 1922, deed. The order for partial distribution refers to the same litigation. The report of the inheritance tax appraiser was filed approximately 14 months following filing of this order.

The trial court in this action had before it a question as to the taxability of certain sums left decedent's brothers by the terms of decedent's will. These sums were left pursuant to an agreement reached in the partial settlement of the litigation in action No. 9605. The Controller does not attempt to challenge on appeal the trial court's finding that these bequests followed on the receipt of good and valuable consideration. (See generally *Estate of Vai* (1966) 65 Cal.2d 144, 153 [52 Cal.Rptr. 705, 417 P.2d 161].) The court further found that the inheritance tax appraiser must have been aware of transactions between the Kupser brothers. Since the transfer which the Controller's office now attempts to attack was part and parcel of action No. 9605, we believe a finding can be inferred that the appraiser was also aware of this action.

It is difficult for this court to accept the contention of the Controller that the inheritance tax appraiser and the Controller's office were unaware of the transfers mentioned in action No. 9605.

Revenue and Taxation Code section 14601 provides that an order fixing tax "is conclusive only as to such property as may have been returned in the inventory . . . *or as may have been included in transfers disclosed to the inheritance tax appraiser* before making his report or issuing his certificate." (Italics added.) The report of the inheritance tax appraiser was filed approximately 4 years after the filing of action No. 9605 and 14 months after the petition for partial distribution. Under these facts it must be concluded that the Controller's office cannot reopen the tax liability of Anna Kupser's *inter vivos* transfer.

*Petitioner's Contention That Decedent Herbert M. Kupser's Gift to His Nephew in 1959 Is Taxable.*

■ J. E. Kupser, the nephew, contends on appeal that Revenue and Taxation Code section 13641 does not require that the gift to him be taxed. Briefly summarized, decedent conveyed a ranch to his nephew, in part as an exchange for an agreement to support and in part as a gift. Gift tax was paid on the value of the gift over and above the value of the support agreement.

■ Revenue and Taxation Code section 13641 through section 13648 "provide that where a testator has made an actual transfer of property during his lifetime, the transfer is taxable under the inheritance tax law to the extent that it was made without valuable consideration, *if the testator retained certain specified incidents of ownership over the property while he was alive.*" (Italics added.) (*Estate of Vai, supra,* 65 Cal.2d at p. 154.)

Revenue and Taxation Code section 13645 reads as follows: "A transfer conforming to Section 13641 and under which the transferee promises to make payments to or care for the transferor is a transfer subject to this part."

Revenue and Taxation Code section 13641, which, by terms of Revenue and Taxation Code section 13645, must be applicable prior to imposition of inheritance taxation, reads as follows: "If a transfer specified in this article was made during lifetime by a decedent, for a consideration in money or money's worth, but the transfer was not a bona fide sale for an adequate and full consideration in money, or money's worth, the amount of the transfer subject to this part shall be the excess of

"(a) The value, at the date of the transferor's death, of the property transferred, over

"(b) An amount equal to the same proportion of the value, at the time of the transferor's death, of the property transferred which the consideration received in money or money's worth for the property transferred bears to the value, at the date of transfer, of the property transferred."

■ The nephew's argument is based on his unique construction of Revenue and Taxation Code section 13641 prior to its amendment in 1959.[3]

[3]Section 13641 of the Revenue and Taxation Code, prior to its amendment in 1959, read as follows: "Any transfer specified in this article made during lifetime by a resident or, if the property transferred is within this State, by a non-resident, by deed, grant, bargain, sale, assignment, or gift, without a valuable and adequate consideration, is a transfer subject to this part. 'Valuable and adequate consideration' is a consideration equal in money or in money's worth to the full value of the property transferred." (Stats. 1943, ch. 658, p. 2302.)

He argues that the amended section 13641 permits a gift in part and a sale in part; it does not require full consideration. In the abstract, nephew's contention may well be true. No doubt an individual can give a gift in part and a sale in part. However, where a decedent transfers property in exchange for an agreement to support which amounts to less than the value of the property transferred, Revenue and Taxation Code section 13645 specifically requires the payment of inheritance taxes.

In *Estate of Stevens* (1958) 163 Cal.App.2d 255 [329 P.2d 337], a mother conveyed certain property to her daughter, and in return secured an agreement to pay support payments, which consideration was valued at less than the property transferred. The trial court found that the transaction was a bargain and sale exchange in part, and also a completed, irrevocable gift. On appeal, the court stated that in determining inheritance tax liability, a finding is not required that two separate transactions were actually entered into, regardless of the intent of the mother at the time the agreement was made. (*Id.* at p. 268.) The court concluded that "From any realistic viewpoint, the net substantial result of the entire transaction herein was that the decedent transferred the entire property to the transferee, and received back in consideraion therefor the transferee's agreement to pay her $600 per month for life." (*Ibid.*) The court discussed the long-standing legal question as to whether a transfer is taxable wherein the transferee promised to support or care for the transferor. It held that the intent of the Legislature in enacting section 13645 was "to subject to tax *inter vivos* transfers made without valuable and adequate consideration where the transferee promises to make payments to or care for the transferor." (*Id.* at p. 272.)

A reading of the amended and prior section 13641 compels the conclusion that the Legislature intended only the amount of the transfer over and above the value of the support agreement to be taxed. That was the import of the 1959 amendment. (See *Estate of Norman* (1966) 245 Cal.App.2d 898, 900-901, 904 [54 Cal.Rptr. 682]; Cal. Estate Administration (Cont. Ed. Bar) p. 460.)

We conclude the value of the ranch over and above the value of the support agreement as calculated on decedent's date of death is taxable to his nephew.

The trial court's ruling as to the transfers made to Vada Gould, Mrs. W. T. Johns, and Mary Souza is affirmed; the trial court's ruling as to the Controller's petition in action No. 20016 is affirmed; in all other respects,

the order appealed from is reversed with instructions to the trial court to take appropriate proceedings not inconsistent with the views expressed herein and to fix the inheritance tax accordingly.

Friedman, Acting P. J., and Janes, J., concurred.